861 A.2d 808

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. AHMAD DANIELS, A/K/A AHMAD DANIEL,
DEFENDANT–APPELLANT.

Argued September 14, 2004—Decided December 14, 2004.

82 

84

*Jay L. Wilensky,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Jafer Aftab,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

Justice ZAZZALI delivered the opinion of the Court.

At defendant's trial, the prosecutor suggested during summation that defendant tailored his testimony to meet the facts testified to by other witnesses. Although defense counsel did not object to the summation, defendant now argues that the comments violated his constitutional rights. The State responds that the United States Supreme Court has held that remarks similar to those at issue in this appeal are constitutional.

The Appellate Division upheld the conviction. Because we conclude that the prosecutor's comments were improper, we now reverse defendant's conviction and remand for a new trial.

## I.

A grand jury charged defendant with second-degree robbery, in violation of *N.J.S.A.* 2C:15–1, and third-degree receiving stolen property, in violation of *N.J.S.A.* 2C:20–7. Defendant was tried before a jury. The following facts, which provide context for the prosecutor's summation, were adduced at trial.

On a September morning in 2001, Paulette Lenez was walking to the post office in Bloomfield, New Jersey. Lenez was followed by a man jogging alongside a slowly-moving SUV. When he was within arm's reach, the jogger snatched Lenez's purse from behind. After a brief struggle, the jogger retreated to the passenger side of the SUV with the purse. Lenez chased him and prevented him from shutting the door. The jogger pushed her back, and the vehicle sped away. An eyewitness testified that she heard a woman screaming, that she saw Lenez "hanging on to a white SUV," and that two men were in the vehicle.

Bloomfield Detective Edward Sousa arrived at the scene and found Lenez "upset and crying." Sousa spoke with witnesses, obtained a description of the vehicle involved in the incident, and sent the description over the State Police Emergency Network. East Orange Police Officer Eric Bromley spotted the SUV and followed it with his lights activated. He testified that when he

first observed the SUV, there were two passengers, but when it finally stopped, only defendant was in the vehicle. When Officer Bromley asked where the other passenger was, defendant did not respond. The officer then arrested defendant.

Shortly thereafter, Lenez identified the vehicle and her purse, which was wedged between the seat and the door of the SUV. She also indicated which items were missing from the purse. Testimony at trial revealed uncertainty over whether defendant was actually involved in the theft. Lenez testified that defendant was not the person who stole her purse. She was unsure whether defendant was the SUV's driver because she never clearly saw the driver's face. Lenez did, however, identify defendant in court as the person that Officer Bromley arrested. One witness identified defendant as the driver of the SUV during the purse-snatching, but another witness testified that she did not see the driver during the incident.

Defendant testified on his own behalf and denied being involved in taking Lenez's purse. He said that he was getting ready for work at his mother's house when "Mumbles," a "mutual friend" of defendant and his cousin, honked a car horn outside. Mumbles then asked defendant to drive the car, and defendant agreed. Defendant testified that he "intended to drive [himself] to work," but that Mumbles directed him to take a different route. Defendant said he did not see the purse described by Lenez in the car, but that Mumbles was "fumbling ... [i]n between the passenger seat and the door."

Defendant testified that they soon arrived at their final destination, a parking lot in East Orange. Mumbles jumped out of the car without saying anything to defendant. Defendant asked Mumbles where he was going, but Mumbles did not answer. Mumbles ran past the back of the SUV and hopped a fence. Defendant stated that he first noticed the presence of police officers when he turned the engine off. The officers approached defendant with their guns drawn, told him to "freeze," and arrested him.

During summation the prosecutor made the following comments:

> Now, I said that the defendant in his testimony is subject to the same kinds of scrutiny as the State's witnesses. But just keep in mind, there is something obvious to you, I'm just restating something you already know, which is all I do in my summation, *the defendant sits with counsel, listens to the entire case and he listens to each one of the State's witness[es], he knows what facts he can't get past.* The fact that he was in the SUV. The fact that there's a purse in the car. The fact that a robbery happened. *But he can choose to craft his version to accommodate those facts.*
>
> [ (Emphasis added).]

Defense counsel did not object to the summation at trial.

At the close of trial, the court instructed the jury concerning the governing case law and the role of the jurors:

> You are to determine the credibility of the various witnesses, as well as what weight to attach to any particular witness's[s] testimony. You and you alone are the sole and exclusive judges of that evidence, the credibility of the witnesses and the weight to attach to the testimony of each witness.
>
> Regardless [of] what counsel may have said during their closing arguments or if I say anything about the evidence, which I generally do not, keep in mind it is your recollection of the evidence that should guide you as the judges of the facts. Any arguments, statements, remarks in the opening or summations of counsel are not evidence and must not be treated by you as evidence.
>
> . . . .
>
> As the judges of the facts you are to determine the credibility of the various witnesses who testified during the course of this trial. You should also determine whether or not a witness's[s] testimony is worthy of belief. You may take some of the following into consideration: [t]he appearance and demeanor of the witness on the witness stand; [t]he manner in which he or she testified; [t]he manner in which they may have acted or reacted to questions that were asked; [t]he witness' interest in the outcome of the case, if any; [h]is or her means of obtaining knowledge of facts to which they testified; [t]he witness's[s] power of discernment; [t]heir judgment, their understanding; [t]he ability or his or her ability to reason, observe, recollect and relate; [a]ny possible bias, if any, in favor of one side or another that a witness may have; [t]he extent to which, if at all, a witness's[s] testimony is either corroborated or contradicted; whether or not the witness testified with an intent to deceive[ ] you; [t]he reasonableness or unreasonableness of a witness's[s] testimony.

The jury convicted defendant of robbery, but acquitted him of receiving stolen property. The trial court imposed a five-year sentence, subject to the No Early Release Act, *N.J.S.A.* 2C:43–7.2.

Defendant then appealed to the Appellate Division, which affirmed the conviction. *State v. Daniels,* 364 *N.J.Super.* 357, 835 *A.*2d 1261 (2003). The panel discussed the prosecutor's "overriding obligation to see that justice is done fairly." *Id.* at 373, 835 *A.*2d 1261 (citation and internal quotation marks omitted). It stated that an appellate court

will not hesitate to reverse a conviction, even on grounds of plain error, where the prosecutor's summation crosses the line and is essentially a comment on the exercise of a right to be present at trial or on the defendant's right to hear all the testimony before taking the stand.

[*Id.* at 373–74, 835 *A.*2d 1261.]

The court found, however, that the prosecutor's comments did not meet that standard for reversal because they "were directed to defendant's credibility as a witness." *Id.* at 374, 835 *A.*2d 1261. The summation "did not emphasize that defendant had an unfair advantage because he sat through the trial when others did not." *Ibid.* Rather, the panel concluded that, by taking the stand, defendant waived his right to remain silent and subjected himself to an attack on his credibility. *Ibid.*

We granted certification. 179 *N.J.* 312, 845 *A.*2d 136 (2004).

## II.

The Appellate Division concluded that the prosecutor's comments were constitutionally permissible, relying on *Portuondo v. Agard,* 529 *U.S.* 61, 120 *S.Ct.* 1119, 146 *L.Ed.*2d 47 (2000). In the following discussion, although we do not base our decision on the Federal or the State Constitution, we treat *Portuondo* at some length because the reasoning of its majority, concurring, and dissenting opinions are relevant to our ultimate conclusion that the prosecutor's comments in this matter were improper. We also discuss Appellate Division opinions that considered prosecutorial accusations of tailoring prior to and after *Portuondo.* Then, to provide perspective for our holding, we examine the practices of other state courts when confronted with accusations of tailoring.

## A.

In *Portuondo, supra,* the prosecutor, in her summation, stated that the defendant was "a smooth slick character . . . who had an answer for everything," and said that part of his testimony "sound[ed] rehearsed." *Id.* at 63–64, 120 *S.Ct.* at 1122, 146 *L.Ed.*2d at 53 (citation and internal quotation marks omitted) (alteration in original). After defense counsel objected, the prosecutor also remarked:

> You know, ladies and gentlemen, unlike all the other witnesses in this case the defendant has a benefit and the benefit that he has, unlike all the other witnesses, is he gets to sit here and listen to the testimony of all the other witnesses before he testifies.
>
> . . . .
>
> That gives you a big advantage, doesn't it. You get to sit here and think what am I going to say and how am I going to say it? How am I going to fit it into the evidence?
>
> . . . .
>
> He's a smart man. I never said he was stupid. . . . He used everything to his advantage.
>
> [*Id.* at 64, 120 *S.Ct.* at 1122, 146 *L.Ed.*2d at 53 (citation and internal quotation marks omitted).]

The trial court allowed the comments, stating that the defendant gained an advantage by being the last witness at trial, and that the advantage "may fairly be commented on." *Ibid.* (internal quotation marks omitted). The defendant was convicted of weapons and sodomy charges. *Ibid.*

After an unsuccessful direct appeal, the defendant filed a petition for habeas corpus, which a federal district court denied in an unpublished order. *Ibid.* A divided panel of the Court of Appeals for the Second Circuit reversed that decision, holding that the prosecutor's comments contravened the defendant's rights under the Fifth, Sixth, and Fourteenth Amendments. *Agard v. Portuondo,* 117 *F.*3d 696, 698 (1997), *reh'g denied,* 159 *F.*3d 98 (1998).

Reversing the Second Circuit, the Supreme Court held that the Federal Constitution does not proscribe prosecutorial comment concerning a testifying defendant's opportunity to tailor his testimony to that of other witnesses. *Portuondo, supra,* 529 *U.S.* at

65, 120 *S.Ct.* at 1123, 146 *L.Ed.*2d at 54. The Court first concluded that there was no historical basis for prohibiting the prosecutor's comments. *Id.* at 65–67, 120 *S.Ct.* at 1123–24, 146 *L.Ed.*2d at 54–55. Furthermore, the Court refused to extend its holding in *Griffin v. California,* 380 *U.S.* 609, 85 *S.Ct.* 1229, 14 *L.Ed.*2d 106 (1965). According to the Court, *Griffin* held that a prosecutor was not permitted to comment on a defendant's refusal to testify because " 'solemniz[ing] the silence of the accused into evidence against· him,' unconstitutionally 'cuts down the privilege [against self-incrimination] by making its assertion costly.' " *Portuondo, supra,* 529 *U.S.* at 65, 120 *S.Ct.* at 1123, 146 *L.Ed.*2d at 54 (alteration in original) (quoting *Griffin, supra,* 380 *U.S.* at 614, 85 *S.Ct.* at 1233, 14 *L.Ed.*2d at 109–10). Thus, because a defendant is under no obligation to aid the State's prosecution, his silence cannot be used against him. *Id.* at 67, 120 *S.Ct.* at 1124, 146 *L.Ed.*2d at 55. The *Portuondo* Court emphasized that what it "prohibited the prosecutor from urging the jury to do in *Griffin* was something *the jury is not permitted to do.*" *Ibid.* Even in the absence of prosecutorial comment on the defendant's failure to testify, the trial court, on request, must instruct the jury that it may draw no negative inferences from defendant's silence, *see ibid.* (citing *Carter v. Kentucky,* 450 *U.S.* 288, 101 *S.Ct.* 1112, 67 *L.Ed.*2d 241 (1981)), because "the inference of guilt from silence is not always 'natural or irresistible,' " *ibid.* (quoting *Griffin, supra,* 380 *U.S.* at 615, 85 *S.Ct.* at 1233, 14 *L.Ed.*2d at 110).

The *Portuondo* majority explained that an inference of a different nature arises when a defendant is present during trial and later testifies. "[I]t *is* natural and irresistible for a jury, in evaluating the relative credibility of a defendant who testifies last, to have in mind and weigh in the balance the fact that he heard the testimony of all those who preceded him." *Id.* at 67–68, 120 *S.Ct.* at 1124,· 146 *L.Ed.*2d at 55. The Court found it "quite impossible" for the jury to assess the defendant's credibility while somehow putting out of its mind that the defendant had, in fact, been in the courtroom to hear all the other evidence before

testifying. *Id.* at 68, 120 *S.Ct.* at 1124, 146 *L.Ed.*2d at 55. The
Court stated that

> the principle [defendant] asks us to adopt here differs from what we adopted in
> *Griffin* in one or the other of the following respects: *It either prohibits inviting the*
> *jury to do what the jury is perfectly entitled to do; or it requires the jury to do*
> *what is practically impossible.*
>
> [*Ibid.* (footnote omitted) (emphasis added).]

In dissent, Justice Ginsburg condemned the majority for "trans-
form[ing] a defendant's presence at trial from a Sixth Amendment
right into an automatic burden on his credibility." *Id.* at 76, 120
*S.Ct.* at 1129, 146 *L.Ed.*2d at 61 (Ginsburg, J., dissenting). The
dissent advocated a "carefully restrained and moderate" approach
and would have permitted the prosecutor to argue, during summa-
tion, that the defendant tailored his testimony only if there was
evidence that supported that contention. *Id.* at 79, 120 *S.Ct.* at
1130, 146 *L.Ed.*2d at 62. The dissent would have banned, howev-
er, the generic accusation of tailoring that occurred when "the
prosecutor could point to no fact suggesting that the defendant
actually engaged in tailoring." *Ibid.* Additionally, Justice Gins-
burg's approach differentiated between statements in summation
and questions during cross-examination. The dissent would have
permitted the prosecutor, during cross-examination, to challenge
the defendant's credibility by highlighting his opportunity to tai-
lor, even when there was no actual evidence of tailoring. *Ibid.*

Despite finding no federal constitutional basis for disallowing
the prosecutor's statements, both the majority and the concur-
rence invited other courts to decide the wisdom of permitting
comments on a defendant's opportunity to tailor. The majority
observed that its decision

> is addressed to whether the comment is permissible as a constitutional matter, and
> not to whether it is always desirable as a matter of sound trial practice. The latter
> question, as well as the desirability of putting prosecutorial comment into proper
> perspective by judicial instruction, are best left to trial courts, and to the appellate
> courts which routinely review their work.
>
> [*Id.* at 73 n. 4, 120 *S.Ct.* at 1124 n. 4, 146 *L.Ed.*2d at 58 n. 4.]

Justice Stevens amplified those sentiments in his concurrence:

> The defendant's Sixth Amendment right "to be confronted with the witnesses
> against him" serves the truth-seeking function of the adversary process. More-

over, it also reflects respect for the defendant's individual dignity and reinforces the presumption of innocence that survives until a guilty verdict is returned. The prosecutor's argument in this case demeaned that process, violated that respect, and ignored that presumption. Clearly such comment should be discouraged rather than validated.

The Court's final conclusion, which I join, that the argument survives constitutional scrutiny does not, of course, deprive States or trial judges of the power either to prevent such argument entirely or to provide juries with instructions that explain the necessity, and the justifications, for the defendant's attendance at trial. [*Id.* at 76, 120 *S.Ct.* at 1129, 146 *L.Ed.*2d at 60–61 (Stevens, J., concurring).]

### B.

The Appellate Division first addressed the issue of prosecutorial accusations of tailoring in *State v. Eason*, 138 *N.J.Super.* 249, 350 *A.*2d 506 (1975). In *Eason*, the prosecutor's closing argument highlighted that the defendant was the only witness who was able to listen to all of the other witnesses' testimony and, consequently, had the opportunity to tailor his testimony to fit the other witnesses' versions. *Id.* at 259, 350 *A.*2d 506. Because it reached its holding on other grounds, the panel found it unnecessary to rule on the propriety of those comments. *Ibid.* It did indicate, however, that such statements "might better have been left unsaid in light of the defendant's constitutional right to confront the witnesses against him and to be present in the courtroom at every stage of the trial." *Ibid.* (citation omitted).

Three years later, the Appellate Division held that such comments were proper. *State v. Robinson*, 157 *N.J.Super.* 118, 384 *A.*2d 569, *certif. denied*, 77 *N.J.* 484, 391 *A.*2d 498 (1978). In *Robinson*, the prosecutor stated, during his summation, that the defendant "had the ability to sit [t]here and listen to the other witnesses testify.... [The defendant's testimony] doesn't look credible. It looks unbelievable. It looks like something fabricated." *Id.* at 119–20, 384 *A.*2d 569. The panel concluded that the comments did not violate the defendant's rights to attend trial and to confront witnesses. *Id.* at 120, 384 *A.*2d 569.

Obviously he did confront these witnesses and was present at his trial. And a reasonable reading of the comments clearly reveals that they were a comment on the credibility of defendant's testimony. It is well settled that when a defendant

waives his right to remain silent and takes the stand in his own defense, he thereby subjects himself to cross-examination as to the credibility of his story. And that issue would involve whether the story had been fabricated. Here the issue of defendant's credibility was whether his testimony was tailored to that of the testimony of other witnesses, a perfectly proper inquiry.

[*Ibid.* (citations omitted).]

More recently, the Appellate Division considered whether a prosecutor's suggestions that a defendant tailored testimony were proper when made during cross-examination. *State v. Buscham,* 360 *N.J.Super.* 346, 366, 823 *A.2d* 71 (2003). Although defense counsel did not object at trial, the defendant contended on appeal that the prosecutor acted improperly by cross-examining the defendant "in a manner so as to point out to the jury that he was the only witness who was present during all the testimony and was thus able to tailor his testimony accordingly." *Id.* at 365, 823 *A.2d* 71. The panel observed that the prosecutor's cross-examination of the defendant was permissible under *Portuondo.* *Id.* at 365–66, 823 *A.2d* 71. And, because the defendant had not raised the argument on appeal, the court declined to consider whether the New Jersey Constitution afforded defendants greater protection from accusations of tailoring. *Id.* at 366, 823 *A.2d* 71. Although ultimately concluding that there was no plain error, the panel left open the question whether the trial court should have instructed the jury that the defendant had the right to attend his trial. *Ibid.*

## C.

We are not the only state court to consider the propriety of prosecutorial comments on a defendant's presence during trial. Before *Portuondo,* the Supreme Judicial Court of Massachusetts addressed the issue in *Commonwealth v. Person,* 400 *Mass.* 136, 508 *N.E.2d* 88 (1987). In *Person,* the prosecutor, during closing argument, asked, "[I]sn't it just a little bit odd that after sitting here for six days and listening to all the testimony he comes in and gives a completely tailored cover story covering every single aspect...." *Id.* at 90. The court reversed the defendant's conviction, holding that the prosecutor's comments were unfairly preju-

dicial. *Id.* at 90, 92 n. 7. Although it observed that the defendant had the right to confront witnesses against him and to hear the prosecution's evidence, and that the State had the burden of proof, the court declined to decide whether the comments had constitutional ramifications. *Id.* at 92 n. 7.

After *Portuondo,* later Massachusetts opinions reaffirmed the principle in *Person,* but stated that *Person* did not establish a per se rule against comments on a defendant's opportunity to fabricate. *See Commonwealth v. Martinez,* 431 *Mass.* 168, 726 *N.E.*2d 913, 924 (2000) (reaffirming *Person* one month after *Portuondo* ). Rather, if there is evidence that the defendant listened to other witnesses' testimony and tailored his own testimony accordingly, the prosecutor could urge the jury to draw a negative inference from the defendant's presence at trial. *See Commonwealth v. Gaudette,* 441 *Mass.* 762, 808 *N.E.*2d 798, 803 (2004).

Recently, in *Gaudette,* the defendant challenged the prosecutor's summation as impermissible under *Person. Id.* at 801. The prosecutor made the following comments: "He had the opportunity to sit and observe the entire Commonwealth's case go into evidence before he testified. He had the benefit. And he was able, the Commonwealth submits, to shape his testimony accordingly to provide the best light possible to support his story about what happened." *Id.* at 801 n. 3 (internal quotation marks omitted). Rejecting the defendant's argument, the court noted that the prosecutor's cross-examination of the defendant had elicited responses that varied from the defendant's previous statement given to police and more closely matched the testimony of other witnesses at trial. *Id.* at 803. Given the "specific evidentiary basis" of tailoring, the court concluded that the prosecutor's comments were proper. *Ibid.*

Other courts have split on the *Portuondo* issue. In *State v. Hemingway,* 148 *Vt.* 90, 528 *A.*2d 746 (1987), which was decided before *Portuondo* but has not been overturned, the Supreme Court of Vermont fashioned a rule similar to that in Massachusetts. The court refused to allow the prosecutor, at closing, to

accuse the defendant of "fill[ing] the gaps" in his testimony by testifying last because there was no evidence of tailoring. *Id.* at 748. Maine's highest court also has proscribed prosecutorial comments and cross-examination "which are strategically designed to cast a defendant's most basic constitutional rights in a negative light." *State v. Rose,* 622 *A.*2d 78, 79 (1993). The Supreme Court of Montana, in dicta, found it "conceivable" that prosecutorial accusations of tailoring could burden a defendant's exercise of his rights under the Montana Constitution. *State v. Hart,* 303 *Mont.* 71, 15 *P.*3d 917, 925 (2001). However, because the case was procedurally flawed, the court declined to address the issue. *Ibid.* Appellate courts in Washington and Connecticut initially forbade such prosecutorial comment on federal constitutional grounds, but both states have since reversed their holdings in light of *Portuondo. See State v. Alexander,* 254 *Conn.* 290, 755 *A.*2d 868, 872 (2000); *State v. Miller,* 110 *Wash.App.* 283, 40 *P.*3d 692, 693, *review denied,* 147 *Wash.*2d 1011, 56 *P.*3d 565 (2002).

### III.

### A.

 With that decisional law as background, we now assess the propriety of the prosecutor's comments in this matter. We begin by noting that defense counsel made no objection to those comments. We, therefore, review any alleged errors under the plain error standard of review. *See State v. Macon,* 57 *N.J.* 325, 333, 273 *A.*2d 1 (1971). Under that standard, we disregard an error unless it is "clearly capable of producing an unjust result." *R.* 2:10–2; *see also State v. Bakka,* 176 *N.J.* 533, 547–48, 826 *A.*2d 604 (2003). In other words, the error must be "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." *Macon, supra,* 57 *N.J.* at 336, 273 *A.*2d 1.

 When reviewing proceedings below for possible errors, we are mindful that our courts have a "responsibility to guarantee the

proper administration of ... criminal justice," and "to take all appropriate measures to ensure the fair and proper administration of a criminal trial." *State v. Williams,* 93 *N.J.* 39, 62, 459 *A.*2d 641 (1983) (citations omitted). That responsibility requires this Court at times to exercise its supervisory authority over criminal trial practices in order to curb government actions that are repugnant to the fairness and impartiality of trials. *See Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 294, 277 *A.*2d 216 (1971) ("We have on many occasions announced policy rulings which, though not constitutionally or legislatively compelled, have served to protect the proper interests of the defendant and to advance the sound administration of justice in our courts."). "The [C]ourt's power to fashion remedies in the realm of criminal justice is unquestioned." *State v. Carter,* 64 *N.J.* 382, 392, 316 *A.*2d 449 (1974), *overruled on other grounds by State v. Krol,* 68 *N.J.* 236, 344 *A.*2d 289 (1975); *see also State v. Cook,* 179 *N.J.* 533, 561–62, 847 *A.*2d 530 (2004) (employing supervisory authority to establish committee to evaluate desirability of mandating electronic recordation of defendants' pretrial statements).

Our review encompasses prosecutorial conduct, including a prosecutor's allegedly improper comments. Prosecutors are expected to assert vigorously the State's case and are given considerable leeway in delivering their summations. *E.g., State v. Smith,* 167 *N.J.* 158, 177, 770 *A.*2d 255 (2001). However, a prosecutor's overarching obligation always remains "not to obtain convictions, but to see that justice is done." *Ibid.* (quoting *State v. Frost,* 158 *N.J.* 76, 82, 727 *A.*2d 1 (1999)). To fulfill that bipartite duty, "a prosecutor must refrain from improper methods that result in a wrongful conviction, and is obligated to use legitimate means to bring about a just conviction." *Ibid.*

Not every improper prosecutorial statement will warrant a new trial. Rather, a reviewing court may reverse only if the prosecutor's comments were "so egregious that [they] deprived the defendant of a fair trial." *Frost, supra,* 158 *N.J.* at 83, 727 *A.*2d 1. The court's inquiry should consider "(1) whether defense

counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." *Smith, supra,* 167 *N.J.* at 182, 770 *A.*2d 255.

B.

We accept the Supreme Court's invitation to determine for our judiciary whether prosecutorial accusations of tailoring are "desirable as a matter of sound trial practice." *Portuondo, supra,* 529 *U.S.* at 73 n. 4, 120 *S.Ct.* at 1127 n. 4, 146 *L.Ed.*2d at 58 n. 4.

The State maintains that a defendant who elects to testify, as defendant did here, is subject to the same credibility attacks as any other witness. To be sure, defendants who testify are obligated to tell the truth like all other witnesses. *State v. Burris,* 145 *N.J.* 509, 530, 679 *A.*2d 121 (1996). Indeed, the right to testify is neither a license to commit perjury nor a shield against contradiction. *Ibid.; see also Nix v. Whiteside,* 475 *U.S.* 157, 173, 106 *S.Ct.* 988, 997, 89 *L.Ed.*2d 123, 138 (1986) ("Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying falsely.").

But, a criminal defendant is not simply another witness. Those who face criminal prosecution possess fundamental rights that are "essential to a fair trial." *Pointer v. Texas,* 380 *U.S.* 400, 403, 85 *S.Ct.* 1065, 1068, 13 *L.Ed.*2d 923, 926 (1965) (internal quotation marks omitted). Indeed, a criminal defendant has the right to be present at trial, *see Illinois v. Allen,* 397 *U.S.* 337, 338, 90 *S.Ct.* 1057, 1058, 25 *L.Ed.*2d 353, 356 (1970), to be confronted with the witnesses against him and to hear the State's evidence, *see Pointer, supra,* 380 *U.S.* at 403, 85 *S.Ct.* at 1068, 13 *L.Ed.*2d at 926, to present witnesses and evidence in his defense, *see Washington v. Texas,* 388 *U.S.* 14, 18–19, 87 *S.Ct.* 1920, 1923, 18 *L.Ed.*2d 1019, 1023 (1967), and to testify on his own behalf, *see Rock v. Arkansas,* 483 *U.S.* 44, 49, 107 *S.Ct.* 2704, 2708, 97 *L.Ed.*2d

37, 44–45 (1987). Prosecutorial comment suggesting that a defendant tailored his testimony inverts those rights, permitting the prosecutor to punish the defendant for exercising that which the Constitution guarantees. Although, after *Portuondo*, prosecutorial accusations of tailoring are permissible under the Federal Constitution, we nonetheless find that they undermine the core principle of our criminal justice system—that a defendant is entitled to a fair trial.

Our analysis does not end here, for we must examine the two categories of prosecutorial accusations of tailoring: generic and specific. Generic accusations occur when the prosecutor, despite no specific evidentiary basis that defendant has tailored his testimony, nonetheless attacks the defendant's credibility by drawing the jury's attention to the defendant's presence during trial and his concomitant opportunity to tailor his testimony. *See Portuondo, supra,* 529 *U.S.* at 70–71, 120 *S.Ct.* at 1126, 146 *L.Ed.*2d at 57. Under *Portuondo, supra,* every defendant who testifies is open to generic accusations. *See ibid.* Allegations of tailoring are specific when there is evidence in the record, which the prosecutor can identify, that supports an inference of tailoring. *See ibid.*

We agree with Justice Stevens that generic accusations of tailoring debase the "truth-seeking function of the adversary process," violate the "respect for the defendant's individual dignity," and ignore "the presumption of innocence that survives until a guilty verdict is returned." *Id.* at 76, 120 *S.Ct.* at 1129, 146 *L.Ed.*2d at 60 (Stevens, J., concurring). We simply cannot conclude that generic accusations are a "legitimate means to bring about a just conviction." *Smith, supra,* 167 *N.J.* at 177, 770 *A.*2d 255. Therefore, pursuant to our supervisory authority, we hold that prosecutors are prohibited from making generic accusations of tailoring during summation.

When a prosecutor makes specific accusations of tailoring, however, we apply a different analysis. If there is evidence of

tailoring, beyond the fact that the defendant was simply present at the trial and heard the testimony of other witnesses, a prosecutor may comment, but in a limited fashion. The prosecutor's comments must be based on the evidence in the record and the reasonable inferences drawn therefrom. *See State v. Rose,* 112 *N.J.* 454, 522, 548 *A.*2d 1058 (1988). Moreover, the prosecutor may not refer explicitly to the fact that the defendant was in the courtroom or that he heard the testimony of other witnesses, and was thus able to tailor his testimony. In all such circumstances, we expect that prosecutors will act in good faith.

Although not raised by defendant at trial or before this Court, we recognize that both trial courts and litigants may have questions as to whether, and to what extent, our opinion concerning prosecutorial summation applies to cross-examination by the State. For future guidance, the same analysis that we have provided for summations applies also to cross-examination. The foundational principle in that framework is that a prosecutor must have "reasonable grounds" for posing questions during cross-examination that impugn a witness's credibility. *Id.* at 504, 548 *A.*2d 1058 (internal quotation marks omitted). Beyond that, if there is evidence in the record that a defendant tailored his testimony, the prosecutor may cross-examine the defendant based on that evidence. However, at no time during cross-examination may the prosecutor reference the defendant's attendance at trial or his ability to hear the testimony of preceding witnesses.

Finally, we presume jurors to be rational and intelligent. *Accord Aetna Life Ins. Co. v. Ward,* 140 *U.S.* 76, 88, 11 *S.Ct.* 720, 724–25, 35 *L.Ed.* 371, 376 (1891). They will exercise their judgment in assessing credibility and will evaluate demeanor and trustworthiness based on their common sense and life experiences. Obviously, close or perfect symmetry between a defendant's testimony and other witnesses' testimony, or other evidence of tailoring, may prompt the jury's scrutiny. But, again, although the prosecutor may comment based on that evidence, the State cannot call the jury's attention to the defendant's presence at trial, a

place where the defendant is constitutionally authorized to be. *See Portuondo, supra,* 529 *U.S.* at 87, 120 *S.Ct.* at 1134, 146 *L.Ed.*2d at 67 (Ginsburg, J., dissenting) (recognizing that "a prosecutor's latitude for argument [may be] narrower than a jury's latitude for assessment").

## C.

Applying the framework established above, we conclude that the summation in this matter was improper. The State contends that the prosecutor's comments were not error because the evidence indicated that, in fact, defendant had tailored his testimony to match that of preceding State witnesses-that is, that the prosecutor made a specific accusation of tailoring. Indeed, the trial record tends to support the prosecutor's argument that defendant tailored his testimony. We do not provide all of the details concerning defendant's alleged tailoring, but a few examples will suffice.

At defendant's trial, eyewitnesses testified that the robbery occurred at approximately 10:00 a.m., and Officer Bromley testified that he arrested defendant at around 10:30 a.m. when defendant was driving a white SUV that matched witnesses' descriptions. Defendant then testified that Mumbles arrived at his house unexpectedly at around 10:15 a.m. and asked defendant to drive. Thus, defendant's version placed him behind the wheel of the SUV near the time of the robbery—a fact that the prosecutor noted defendant "can't get past" given the circumstances of his arrest—but in a way that supported his testimony that he was not driving the SUV during the robbery, which had occurred only minutes earlier. Furthermore, the State's witnesses testified that, shortly after Paulette Lenez's purse had been stolen, defendant was arrested in a vehicle that contained that purse. Defendant testified that Mumbles fumbled between the seat and door with his hand, grasping at some object that defendant claims he did not see. Defendant's testimony, therefore, acknowledged the presence of some unknown item—another fact that he could not "get

past"—while advancing his contention that he was unaware that it was a woman's purse.

During summation, the prosecutor focused the jury's attention on this sequence of events, highlighting that defendant's version conformed with that of other witnesses when convenient for defendant, but diverged where defendant found divergence advantageous. The prosecutor stated that there were "[t]oo many coincidences for us to ignore and too many coincidences that continue to point to the defendant." Whether the prosecutor's argument was persuasive or unconvincing was a question for the jury to determine. We simply conclude that, without adding more, the prosecutor's summation would have been fair comment.

However, the prosecutor further remarked that

the defendant sits with counsel, listens to the entire case and he listens to each one of the State's witness[es], he knows what facts he can't get past.... But he can choose to craft his version to accommodate those facts.

Thus, the prosecutor's comments highlighted the fact that defendant was able to "sit" in the courtroom during trial, enabling him to "listen[ ]" to other witnesses testify. Then, the prosecutor urged the jury to infer that defendant thus "craft[ed] his version." These comments are precisely the type that a prosecutor is prohibited from making, even when the record indicates that defendant tailored his testimony.

## IV.

Having determined that the prosecutor's comments were improper, we now turn to whether the trial court's charge to the jury cured the harmful effects of those comments. We conclude that the charge did not.

After the prosecutor's summation, the trial court issued a generic jury instruction:

Regardless [of] what counsel may have said during their closing arguments ..., keep in mind it is your recollection of the evidence that should guide you as the judges of the facts. Any arguments, statements, remarks in the opening or summations of counsel are not evidence and must not be treated by you as evidence.

This charge properly reminded the jury to differentiate argument from evidence, but the court made no mention of the prosecutor's accusations of tailoring. Indeed, later in the charge, the court directed the jury, when assessing witness credibility, to consider a witness's "means of obtaining knowledge of facts to which [he] testified." We do not believe this statement was intended to signal to the jury that defendant's presence during trial was among the potential sources of his testimony. Rather, we highlight this excerpt simply to note that the charge did not cure the prosecutor's comments.

Accordingly, we find that the prosecutor's comments were unfairly prejudicial to defendant. Failure to give an adequate curative instruction was plain error that "raise[d] a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." *Macon, supra,* 57 *N.J.* at 336, 273 *A.*2d 1.

## V.

For the foregoing reasons, we reverse the decision of the Appellate Division and remand for a new trial consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.