# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPBRIANNATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4076-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EDGAR A. MEJIA,

     Defendant-Appellant.

_____

> Submitted September 26, 2018 – Decided March 27, 2019
>
> Before Judges Koblitz and Ostrer.
>
> On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 15-03-0525.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Mary R. Juliano, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Edgar A. Mejia appeals from his conviction, after a jury trial, of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). After merger, the court sentenced defendant to a thirty-year prison term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. As plain error, defendant contends the jury instruction on aggravated sexual assault was not properly tailored, and the prosecutor made improper comments in her summation. Having reviewed defendant's arguments in light of the record and applicable principles of law, we affirm. However, we remand for the court to provide the required reasons for a financial penalty it imposed.

The indictment charged defendant with a non-specific "act of sexual penetration with A.H." (Anna),[1] who was seven years old. The State's theory at trial was that defendant digitally penetrated Anna's vagina and touched her buttocks, although there was evidence that defendant also penetrated the anus.

I.

Anna testified at the trial, but the State's case centered on the testimony of the sexual assault nurse examiner (SANE nurse) who examined Anna the day

---

[1] We utilize pseudonyms to protect the victim's privacy.

A-4076-16T4

of the assault, and Anna's video-recorded statement to a detective three days later.

The assault occurred in the bedroom of a family friend and babysitter, B.R. (Brianna). Brianna had asked Anna to go to the bedroom so she would not hear the adults' conversation in the living room. Anna took with her defendant's tablet computer, which he had earlier permitted her to use. Soon afterwards, Brianna retreated to the bedroom's walk-in closet, to take a private phone call. Defendant entered the bedroom a few minutes after that. Not feeling well, he obtained Brianna's permission to rest on the bed.

Brianna was on the phone for almost a half hour. During the call, according to Anna, defendant put his hand down her pants and underneath her underwear. He first touched her buttocks and then her vagina. In her interview with the detective, Anna seemed to indicate that defendant inserted his finger in the anus and touched the vagina, but her statements were not crystal clear, even though she used diagrams and an anatomical doll to help. Referring to the "butt," she said defendant's hand went "like almost to the hole," "on the hole, but a little bit through the hole," and his finger "felt like it went in." Asked if defendant's finger went inside her vagina ("private"), Anna said, "it just felt like

3

he was touching it." Anna said it hurt because of defendant's long fingernails. She asked him to stop and he did.

Later that evening, Anna reported the assault to her mother, B.M. (Beth). Beth testified that Anna said defendant touched her in her "hole" while pointing toward her vaginal area. Anna complained that it hurt when she urinated. Beth took Anna to the hospital.

The SANE nurse said she was told Anna had complained only of vaginal pain. The nurse observed redness and swelling on Anna's hymenal area, around the clitoral head, and part of the external vagina. The areas looked "brighter and more inflamed" than normal. Anna cried out in pain when the nurse attempted to swab the hymenal ring area, so the nurse stopped. The nurse said that an infection or any form of irritation could cause such inflammation, but she did not opine what caused it in Anna's case. Nonetheless, the State in summation referred to the inflammation as circumstantial evidence of the assault.

The State also elicited testimony that defendant kept his fingernails long. Even a character witness for the defense – defendant's landlord and occasional employer for handyman jobs – recalled that he observed that defendant kept one fingernail long and used it as a tool. The State also elicited that a couple days

A-4076-16T4

after the assault, defendant asked Brianna to say that she was in the bedroom with him and Anna, and Brianna said that she would not lie for defendant.

Testifying in his own defense, defendant denied that he touched Anna. The defense highlighted the differences between Anna's recorded statement to the detective, which was relatively detailed, and her trial testimony, in which she stated only that defendant touched her butt.

The evidence also varied regarding the extent to which the doors to the bedroom and the walk-in closet were open. According to Anna and one of the other adults in the apartment who testified at trial, the bedroom door was almost closed or closed and locked. Defendant asserted it was open. The defense preemptively elicited that defendant had a prior federal conviction for which he received time served and twelve months probation.

## II.

Defendant presents the following points for our consideration:

POINT I

IN A CASE WHERE THE EVIDENCE REGARDING SEXUAL PENETRATION WAS EXTREMELY LIMITED AND CONTRADICTORY, AND, IN FACT, MOST OF THE RECITATIONS OF THE INCIDENT BY THE ALLEGED VICTIM REFERRED TO TOUCHING RATHER THAN PENETRATION, THE JURY INSTRUCTION WAS NOT PROPERLY TAILORED TO DISTINGUISH BETWEEN FIRST-

DEGREE AGGRAVATED SEXUAL ASSAULT -- WHICH CARRIES A DRACONIAN MANDATORY MINIMUM OF 25 YEARS IN PRISON WITHOUT PAROLE -- AND SECOND-DEGREE SEXUAL ASSAULT, WHICH CAN BE PUNISHED BY NO MORE THAN A TEN-YEAR/85% ORDINARY PRISON TERM. (NOT RAISED BELOW).

POINT II

THE ASSISTANT PROSECUTOR'S SUMMATION IMPROPERLY ACCUSED THE DEFENDANT OF USING A SPANISH-LANGUAGE INTERPRETER TO BUY TIME TO ANSWER UNTRUTHFULLY -- A NOXIOUS ARGUMENT THAT SHOULD NOT BE PERMITTED TO TIP THE BALANCE IN A CRIMINAL TRIAL WHERE CREDIBILITY IS AT STAKE. (NOT RAISED BELOW).

POINT III

A REMAND IS REQUIRED FOR A STATEMENT OF REASONS REGARDING ONE OF THE IMPOSED PENALTIES.

III.

A.

We first consider defendant's challenge to the court's instruction on the aggravated sexual assault charge. Defendant notes that the judge informed the jury that vaginal intercourse required "penetration of the . . . space between the labia majora or outer lips of the vulva." Defendant contends the judge should have been similarly detailed in his description of anal penetration, to avoid the

6

possibility that the jury would conclude that merely touching the buttocks constituted anal penetration.

We are unpersuaded. In its instruction on aggravated sexual assault, the court instructed the jury as follows:

> In order to convict the defendant of this charge the State must prove the following elements beyond a reasonable doubt: First, that defendant committed an act of sexual penetration with another person; two, that defendant acted knowingly; and, three, that at the time of the penetration the victim was less than 13 years old.
>
> The first element that the State must prove beyond a reasonable doubt is that defendant committed an act of sexual penetration with [Anna]. According to the law, vaginal intercourse between persons or insertion of the hand, finger, or object into the anus or vagina by the defendant constitutes sexual penetration.
>
> The definition of vaginal intercourse is penetration of the vagina or of the space between the labia majora or outer lips of the vulva. Any amount of insertion, however slight, constitutes penetration; that is, the depth of insertion is not relevant.

Defendant raised no objection to the charge when the judge proposed it during the charging conference, or after he delivered it to the jury. See R. 1:7-2 (stating that "[e]xcept as otherwise provided by R. 1:7-5 and R. 2:10-2 (plain error), no party may urge as error any portion of the charge to the jury or omissions therefrom unless objections are made thereto before the jury retires

to consider its verdict"). Therefore, we shall not reverse unless the court committed an error "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

In the context of jury instructions, plain error is a "legal impropriety . . . prejudicially affecting the substantial rights of the defendant and sufficiently grievous to . . . convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538 (1969); accord State v. Montalvo, 229 N.J. 300, 320-21 (2017). Not any possibility of an unjust result will suffice as plain error, only one "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

Here, we discern no error, let alone plain error. We consider whether a jury charge as a whole was accurate and provides "a comprehensible explanation of the questions that the jury must determine . . . ." State v. Singleton, 211 N.J. 157, 181-82 (2012) (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). "No party is entitled to have the jury charged in his or her own words . . . ." State v. Jordan, 147 N.J. 409, 422 (1997). A court should tailor its instruction if "the statement to relevant law, when divorced from the facts, [would be] potentially

confusing or misleading to the jury." State v. Robinson, 165 N.J. 32, 42 (2000). We discern no possibility of confusion here.

The judge explained to the jury that both vaginal and anal penetration required "insertion, however slight" and "the depth of insertion is not relevant." The plain language of the instruction referred to "insertion of the hand, finger or object into the anus or vagina." The instruction did not refer to the buttocks, nor cause the jury to be confused that inserting a finger between the buttocks is equivalent to inserting a finger into the anus. Notably, Anna did not use the word "buttocks" or "anus." She referred generally to the buttocks region as a "butt" and referred to the anus as a "hole," as she did the vagina. Furthermore, the court's subsequent instruction of the lesser-included offense of sexual assault, which did not require penetration, highlighted for the jury the difference between touching the buttocks, and penetrating the anus.

We recognize that the court's instruction could have been improved. First, there was no point in mentioning vaginal intercourse or its explanation, inasmuch as it was not charged. Secondly, the court, without explanation, modified the model charge by moving the sentence about the nature of required insertion, so it followed the explanation of vaginal intercourse, instead of the

9

phrase in which the concept of insertion as penetration is first introduced.[2]  Yet, reversal is not warranted where "instructions were not so much incorrect as they were capable of being improved."  State v. Delibero, 149 N.J. 90, 106 (1997).

Also significant in our plain error analysis is that the State did not seek conviction of aggravated sexual assault based on anal penetration. Notwithstanding Anna's statements in her recorded interview, the prosecutor contended in summation that defendant committed lesser-included sexual assault by non-penetration touching of the buttocks, and aggravated sexual assault by penetration of the vagina.  She argued:

> The defendant was 52 years old when he did this to [Anna], when he chose to reach under her leggings, under her underwear, and touch her butt with his hand, and she felt it and his hand was moving.
>
> Well, that, ladies and gentlemen, in and of itself is sexual assault, but he did more.  Because not only did he touch her butt, he reached his fingers under and around, he touched her vagina and he penetrated her. And you know that because [Anna] said that's what happened.  [Anna] demonstrated that's what happened. And [Anna] is corroborated by the SANE exam and all

---

[2]  "According to the law, [choose appropriate] vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or vagina, either by defendant or by another person upon defendant's instruction, constitut[es] 'sexual penetration.'  Any amount of insertion, however slight, constitutes penetration, that is, the depth of insertion is not relevant."  Model Jury Charge (Criminal), "Aggravated Sexual Assault-Victim Less Than 13 (N.J.S.A. 2C:14-2a(1))" (rev. Jan. 24, 2005).

the other evidence.  And that, ladies and gentlemen, that
is aggravated sexual assault.

The judge reaffirmed the State's position in the course of his charge on endangering the welfare of a child, specifically, his reference to the nature of the sexual conduct alleged.  The judge stated:

> The second element that the State must prove beyond a reasonable doubt is that defendant knowingly engaged in sexual conduct.  Here the State alleges that the sexual conduct committed by defendant consisted of touching [Anna]'s buttocks and/or putting his finger or fingers in her vagina.

In sum, we do not believe the failure to tailor the jury charge led the jury to a result it otherwise might not have reached.

B.

We turn to defendant's claim of prosecutorial misconduct in summation. Defendant was born in Guatemala and spoke Spanish as his "primary language." Nevertheless, he chose to testify in English, with a stand-by interpreter.  At the outset of his testimony, defense counsel advised him that the interpreter would assist him if he did not understand a question.

During direct examination, defendant asked counsel to repeat some questions, but did not ask the interpreter to help.  During cross-examination, defendant asked for repetition of some questions, and interpretation of others –

11

some on topics peripheral to the key issues in the case, some not.[3]  In summation,

the prosecutor attacked defendant's credibility by arguing that defendant availed

himself of the interpreter to "buy time" in answering certain questions.   She

stated,

> Now, listen, I know my voice was off on Thursday but
> he didn't say he couldn't hear me.  He needed my words
> interpreted.  Did he?  Or was he just buying time to
> think of what to say?  Was he stalling?  What about his
> demeanor told you that was what he was doing?

Defendant contends these remarks were objectionable, as they invited the

jury to punish defendant for availing himself of an interpreter, which he had

every right to do.  We agree the remarks were inappropriate on that basis.

A prosecutor may generally argue in summation that a defendant, as a

witness, did not testify credibly.  State v. Bauman, 298 N.J. Super. 176, 208

(App. Div. 1999).  However, a prosecutor must exercise caution in challenging

a defendant's credibility based on his exercise of a fundamental procedural right.

For example, a prosecutor may not generically accuse a defendant of tailoring

---

[3]  For example, he asked for an interpretation of the question about his immigration to the United States, "And you lived [in Guatemala] until what year?"  He also asked for the interpreter's assistance when the prosecutor asked, "And [Anna's] focus, when you came in [to the bedroom] was on the tablet, correct?"  Defendant also apparently had difficulty understanding the word "ports" as used to refer to medical devices, and the word "sideburns."

his testimony, by pointing to the defendant's presence and ability to listen at trial, because defendant has a fundamental right to be present. State v. Daniels, 182 N.J. 80, 97, 101 (2004). However, a prosecutor may assert specific tailoring if based on evidence other than defendant's presence. Id. at 99.

A defendant who cannot speak or understand English has a constitutional right to the assistance of an interpreter at trial. State v. Guzman, 313 N.J. Super. 363, 377-78 (App. Div. 1998). That right pertains not only to the ability to understand what others are saying, but also to vindicate the right to testify on one's own behalf. As with the right to be present, a prosecutor may not "invert" that right by "permitting that prosecutor to punish the defendant for exercising that which the Constitution guarantees." Daniels, 182 N.J. at 98. The prosecutor did not point to specific evidence demonstrating that the defendant's resort to the interpreter was calculated to buy time, or was based on any reason other than a lack of understanding English.

As defendant did not object and prompt the court to provide a curative instruction, he must establish plain error, the standard for which we have already described. "[N]ot every prosecutorial misstatement warrants a new trial." State v. Feal, 194 N.J. 293, 312 (2008). A prosecutor's improper comments must be

"so egregious that [they] deprived the defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999).

They were not so here. In Feal, 194 N.J. at 313, the Supreme Court concluded that the prosecutor's "fleeting references to defendant's presence in the courtroom" did not lead "the jury to a result it otherwise would not have reached," because the defendant's credibility was largely challenged on other grounds. We reach the same conclusion in this case. The prosecutor's comment was fleeting. Furthermore, defendant's credibility was mainly challenged on other grounds. He lied about his fingernails. He asked Brianna to say she was in the bedroom when she was not. Defendant had a criminal conviction. And, his testimony was at odds with Anna's, whose allegation of vaginal touching was apparently corroborated by the SANE nurse's physical findings.

In sum, we reject defendant's contention that he is entitled to a new trial based on the prosecutor's comments in summation.

## C.

The State concedes that the trial court omitted its reasons for imposing the Sex Crime Victim Treatment Fund penalty. See State v. Bolvito, 217 N.J. 221, 235 (2014). We remand for the court to reconsider and provide reasons for the penalty imposed.

A-4076-16T4

Affirmed as to the conviction and sentence, except remanded as to the Sex Crime Victim Treatment Fund penalty.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4076-16T4