**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3513-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LUIS A. MAISONET,

     Defendant-Appellant.

_____

Submitted May 7, 2019 – Decided May 31, 2019

Before Judges Geiger and Enright.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 16-11-2635.

Joseph E. Krakora, Public Defender, attorney for appellant (Margaret R. McLane, Assistant Deputy Public Defender, of counsel and on the briefs).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Nicole L. Campellone, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Luis Maisonet, was convicted of first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4a(1); second-degree unlawful possession of a weapon without a permit, N.J.S.A. 2C:39-5b(1); and fourth-degree aggravated assault, pointing a firearm, N.J.S.A. 2C:12-1b(4). In a separate trial, defendant also was convicted of second-degree certain persons not to have a weapon, N.J.S.A. 2C:39-7b(1).

At sentencing, the trial judge merged the possession of a weapon for an unlawful purpose count with the murder count. Defendant then was sentenced to life in prison on the murder charge, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The trial court also imposed a consecutive eighteen-month sentence for aggravated assault and concurrent ten-year sentences for the remaining second-degree charges.

On appeal, defendant argues:

> I. DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO COUNSEL WHEN THE JUDGE ARBITRARILY DENIED HIS REQUEST FOR A CONTINUANCE TO RETAIN PRIVATE COUNSEL.
>
> II. THE MURDER CONVICTION MUST BE REVERSED BECAUSE THE JURY WAS NOT INSTRUCTED ON ANY LESSER-INCLUDED OFFENSES.

2

III.   THE IMPOSITION OF A LIFE SENTENCE, CONSECUTIVE TO AN 18-MONTH SENTENCE, IS MANIFESTLY EXCESSIVE.

We conclude the trial judge did not err on these points.  Accordingly, we affirm defendant's conviction and sentence.

At trial, the jury heard testimony that on September 1, 2016, defendant's former girlfriend, Jennifer Villanueva, and her live-in boyfriend, Christopher Romero, drove to Atlantic City, where they worked at a mall.  In the middle of that day, defendant drove to the Walk in Atlantic City, parked his car and walked into a clothing store managed by Romero.  When he found Romero, defendant retrieved a gun from a bag and shot him.  After Romero fell to the ground, defendant shot him two more times.  An autopsy confirmed Romero died due to gunshots to his torso, with perforations of his left lung, stomach and liver.

According to eyewitness testimony, after defendant shot Romero, he left the scene, crossed the street and walked into another clothing store where Villanueva was working.  Defendant retrieved the gun from the bag again, pointed it at Villanueva, said "bye-bye, baby," and then fired the gun into the store ceiling before shooting himself.  An off-duty police officer was able to move the gun away from defendant once defendant had fallen to the floor and reached for the gun again.

A-3513-17T3

Testimony at trial revealed that well before this incident, Villanueva had broken up with defendant and become romantically involved with Romero. Text messages read to the jury also showed defendant repeatedly pursued reconciliation with Villanueva and asked her why she left him for another man. Additionally, the record reflected defendant sent aggressive text messages to Romero, initiated a physical altercation with him in the months leading up to the murder, and told Romero he would kill him if Romero stayed with Villanueva.

I.

In his first point heading, defendant contends he was denied his constitutional right to counsel because he did not receive a continuance from the trial judge to secure private counsel. He maintains the trial judge "summarily and arbitrarily" denied his adjournment request, deprived him of his right to counsel of choice and gave undue weight to the need to move ahead with the trial.

Trial commenced in December 2017, approximately fifteen months after the murder. It is undisputed that on the first day of trial, as jury selection was due to commence, defendant requested an adjournment to retain private counsel. He expressed the concern that his then-current attorney, a public defender, lacked experience as she had "only two murder--two trials in her practice."

However, he also conceded he had told his attorney, "if she could get me a deal, I'd go with her all the way to the end." The trial judge informed defendant he had two choices: either hire his own attorney or represent himself. Defendant asked for time to call his family members to see if they could "get some money together" to hire private counsel. He did not mention the name of any particular attorney nor state any prior efforts he had made to retain private counsel. After listening to defendant's concerns, the trial court denied defendant's adjournment request, finding his public defender to be experienced and capable of representing him. It also observed defendant had known about the trial date for a long period of time and knew who his attorney was.

The Sixth Amendment, applicable to the states by virtue of the Fourteenth Amendment, Gideon v. Wainwright, 372 U.S. 335 (1963), ensures a defendant in a criminal prosecution shall enjoy the right to the assistance of counsel. Likewise, our State Constitution guarantees this right. N.J. Const. art. I, ¶ 10. See State v. Fusco, 93 N.J. 578, 583 (1983). An essential element of the constitutional right to the assistance of counsel is the right of a defendant to secure counsel of that defendant's choice. State v. Furguson, 198 N.J. Super. 395, 401 (App. Div. 1985). Nonetheless, the right to retain counsel of one's own choice is not absolute. Ibid. It "cannot be insisted upon in a manner that will

obstruct an orderly procedure in courts of justice and deprive such courts of the exercise of their inherent powers to control the same." Ibid. (quoting Smith v. United States, 288 F. 259, 261 (D.C. Cir. 1923)).  Therefore, a defendant who seeks to invoke the right to choose his own counsel must diligently pursue that right and in the absence of such diligence, a trial court must be able to exercise control over its calendar.  Ibid.

To assess a defendant's request for an adjournment, the Furguson court instructed that a trial court should consider a number of factors, including:

> the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> [Id. at 402 (quoting United States v. Burton, 584 F. 2d 485, 490-91 (D.C. Cir. 1978)).]

6

A decision on whether or not to grant a continuance to a defendant looking to change counsel is reviewed under a deferential standard. In essence, the exercise of discretion to grant or deny an adjournment will not constitute reversible error unless it is demonstrated the abuse of discretion caused a defendant a manifest wrong or injury. Ibid.

After giving defendant the opportunity to explain his request for a continuance, the trial court stated there was no reason to believe defendant's attorney could not represent defendant fairly, noting his counsel was an experienced lawyer. The trial court found it had no reason to doubt defense counsel was able to represent defendant and when defendant protested, the trial judge explained the interested parties were there for a trial, that defendant had known about the trial for a long period of time, and had known about his plea offer and who his attorney was. The trial judge found no identifiable prejudice defendant would suffer by having his existing competent and prepared counsel represent him, so she denied his request.

Notably, when defendant moved for an adjournment, he provided no explanation for why he waited until the first day of trial to seek a continuance. Moreover, he offered no concrete financial plan for retaining private counsel nor did he mention a timetable for securing a private attorney. Accordingly, any

7

continuance granted to defendant would have been of indeterminate duration, with no assurance he could retain private counsel. Under these circumstances, we find no mistaken exercise of the judge's discretion in denying defendant's belated adjournment request.

II.

Defendant next argues his murder conviction must be reversed because the jury was not instructed on the lesser-included offenses of aggravated manslaughter and reckless manslaughter. He did not ask for these instructions during the trial, although his trial counsel did seek and was denied a request for a lesser-included offense charge for passion/provocation manslaughter.

"The appropriate time to object to a jury charge is 'before the jury retires to consider its verdict.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 1:7-2). "Where there is a failure to object, it may be presumed that the instructions were adequate." State v. Belliard, 415 N.J. Super. 51, 66 (App. Div. 2010) (quoting State v. Morais, 359 N.J. Super. 123, 134-35 (App. Div. 2003)). Nonetheless, a trial court has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense. State v. Garron,

177 N.J. 147, 180 (2003); State v. Choice, 98 N.J. 295, 299 (1985); State v. Powell, 84 N.J. 305, 318-19 (1980).

As defendant was indicted for murder, it is proper to consider whether the lesser-included offenses of aggravated manslaughter and reckless manslaughter should have been charged. Murder, as defined by relevant provisions of the New Jersey Code of Criminal Justice (Code), occurs when an actor "purposely . . . [or] knowingly causes the death or serious bodily injury resulting in death . . . ." N.J.S.A. 2C:11-3(a). However, "[c]riminal homicide constitutes aggravated manslaughter when: The actor recklessly causes death under circumstances manifesting extreme indifference to human life . . . ." N.J.S.A. 2C:11-4(a). Moreover, the Code instructs, in pertinent part: "Criminal homicide constitutes manslaughter when . . . [i]t is committed recklessly . . . ." N.J.S.A. 2C:11-4(b).

In State v. Cruz, 163 N.J. 403 (2000), our Supreme Court confirmed the differences between the state of mind required for aggravated manslaughter versus the state of mind required for murder. The Cruz Court explained that serious bodily injury murder involves a higher degree of accountability than does aggravated manslaughter. Id. at 417. Thus, to secure a conviction for "purposeful" murder involving serious bodily injury, the State must demonstrate a "defendant's conscious object [was] to cause serious bodily injury that then

9

resulted in the victim's death" and defendant "knew that the injury created a substantial risk of death and that it was highly probable that death would result." Id. at 417-18. To establish "knowing" murder resulting from serious bodily injury, the State must make the same showing, except that, instead of proving the infliction of serious bodily injury was defendant's conscious objective, it need only demonstrate the accused "was aware that it was practically certain that his conduct would cause serious bodily injury." Id. at 418.

However, to convict a defendant of aggravated manslaughter, the State must prove "the defendant was aware of and consciously disregarded a substantial risk of death, i.e., a probability that death would result, and that the defendant manifested extreme indifference to human life." Id. at 417. If a defendant disregarded only the possibility of death, that defendant would be guilty of reckless manslaughter. State v. Breakiron, 108 N.J. 591, 605 (1987).

Given these critical distinctions, we review whether the trial court erred in deciding not to instruct the jury on the lesser-included offenses of aggravated manslaughter and reckless manslaughter. Our review is under a plain-error standard, as defendant did not object to the lack of such instructions at any point during the trial. A conviction will be reversed under this standard only if the error is "sufficient to raise a reasonable doubt as to whether [it] led the jury to a

10

result it otherwise might not have reached." State v. Daniels, 182 N.J. 80, 95 (2004) (alteration in original) (quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Applying the law to the facts in this case, we conclude defendant was not entitled to a jury instruction on either aggravated manslaughter or reckless manslaughter. Indeed, the jury heard testimony confirming defendant repeatedly had expressed his unhappiness over his broken relationship with Villanueva and threatened to kill Romero months before the murder. Additionally, on the day of the murder, defendant went to the clothing store where Romero was working and shot his victim three times, evincing his intent to kill Romero. There simply was insufficient evidence for a reasonable person to have convicted defendant of aggravated manslaughter or reckless manslaughter, while acquitting him of murder. As the facts of the case did not clearly indicate the jury could find defendant guilty of aggravated or reckless manslaughter, we find no error, let alone plain error, with the trial court's failure to deliver unrequested charges to the jury on these lesser-included offenses.

III.

Lastly, defendant contends his eighteen-month sentence for fourth-degree aggravated assault, which runs consecutive to a maximum sentence of life in prison with an eighty-five percent period of parole ineligibility for his murder

11

conviction, is manifestly excessive. He criticizes the trial court's qualitative analysis in assessing aggravating and mitigating factors and argues the trial judge engaged in impermissible double counting by finding murder is a serious crime. Furthermore, he insists the trial judge erred in rejecting the mitigating factors he requested, namely mitigating factors three, four, seven and eleven. N.J.S.A. 2C:44-1(b)(3), (4), (7) and (11).

The record reflects that before defendant was sentenced, the trial court carefully considered his criminal history as well as various aggravating and mitigating factors. Ultimately, it declined to find mitigating factors three, four, seven and eleven. In finding these mitigating factors inapplicable, the sentencing judge determined defendant's offenses were committed openly, in front of eyewitnesses, "after several months of stewing over a lost love." The trial court also noted defendant had a serious criminal history, which included grand larceny and robbery convictions. It concluded the aggravating factors clearly and substantially outweighed the non-existent mitigating factors and that a substantial commitment to state prison was warranted. The record also demonstrates the trial judge engaged in a lengthy analysis, consistent with State v. Yarbough, 100 N.J. 627 (1985), before imposing a consecutive sentence for the fourth-degree offense involving Villanueva. The trial court specifically

12

noted Villanueva was a separate victim who endured a separate threat of violence.

"An appellate court should disturb the sentence imposed by the trial court only in situations where the sentencing guidelines were not followed, the aggravating and mitigating factors applied by the trial court are not supported by the evidence, or applying the guidelines renders a particular sentence clearly unreasonable." State v. Roach, 146 N.J. 208, 230 (1996). We are satisfied the findings provided by the trial court regarding each aggravating and mitigating factor it considered were based on competent, credible evidence. Moreover, we find no evidence of "double counting." Instead, the trial judge correctly applied the sentencing guidelines enunciated in the Code and sentenced defendant for each offense in the appropriate range. Therefore, the sentence imposed was not manifestly excessive or unduly punitive and did not constitute a mistaken exercise of discretion. State v. O'Donnell, 117 N.J. 210, 215-16 (1989); State v. Ghertler, 114 N.J. 383, 393-94 (1989); State v. Roth, 95 N.J. 334, 363-65 (1984).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3513-17T3