**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3784-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARIO FIGUEROA, a/k/a
ALMIGHTY FIGUEROA,
and MICHAEL FIGUEROA,

    Defendant-Appellant.

_____

Submitted May 27, 2020 – Decided July 8, 2020

Before Judges Yannotti, Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment Nos. 16-04-0739 and 16-07-1223.

Joseph E. Krakora, Public Defender, attorney for appellant (Jodi Lynne Ferguson, Assistant Deputy Public Defender, of counsel; Jennifer G. Chawla, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Mary Rebecca

Juliano, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant was tried before a jury and found guilty of armed robbery, witness tampering, and other offenses, as charged in Indictments Nos. 16-04-0739 and 16-07-1223. Defendant appeals from judgments of conviction dated February 13, 2018, and March 2, 2018. For the reasons that follow, we affirm in part and remand in part to the trial court for a statement of reasons concerning the imposition of consecutive sentences for the witness-tampering convictions, and resentencing on counts four, five, and six of Indictment No. 16-04-0739.

I.

Defendant was charged under Indictment No. 16-04-0739 with first-degree armed robbery of Christopher Perricone, N.J.S.A. 2C:15-1 (count one); fourth degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d) (count two); third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count three); first-degree tampering with witness Kirk Charlton, N.J.S.A. 2C:28-5(a) (count four); second-degree retaliation against Charlton, N.J.S.A. 2C:28-5(d) (count five); and second-degree aggravated assault upon Charlton, N.J.S.A. 2C:12-1(b)(1) (count six). Defendant also was charged under

Indictment No. 16-07-1223, with first-degree tampering with witness Ivonne Robinson, N.J.S.A. 2C:28-5(a) (count one).  Before the trial, the victim died of causes unrelated to the robbery.

Defendant filed various pre-trial motions, including a motion to suppress the victim's wallet, which the police recovered during their investigation.  The judge scheduled a hearing on that motion and the State was prepared to present testimony by the arresting officer.  During the proceedings on the motion, defendant asked the judge to review a recording a police officer made using his Mobile Video Recorder (MVR).

The recording was made during the show-up procedure, which took place shortly after the robbery was committed.  The victim observed defendant and Robinson and stated they were not the persons who robbed him.

The judge stated that he would listen to the evidence and then rule on the motion.  Defendant repeatedly interrupted the judge and insisted that the MVR recording showed he did not commit the robbery.  Defendant was removed from the courtroom.  Based on statements defendant made during the arguments, the judge found that he did not want to pursue the suppression motion.

Defendant returned to court several hours later to execute the plea cut-off. The judge stated that defendant had chosen to waive all of his pretrial motions

and proceed directly to trial. Defendant reserved the right to seek a hearing on the admissibility of the victim's statements.

Defendant stated that he had a right to call witnesses and he was "going to need the victim, because he's in my favor." The judge told defendant the victim could not be called because he was deceased. Defendant said the judge would have to dismiss the charges.

The case was scheduled for trial before another judge. At a pretrial conference, defendant asked the trial judge if he had the right to confront the "alleged victim in this case or not." The judge stated that defendant would not be permitted to engage in disruptive conduct before the jury. Defendant was removed from the courtroom.

The judge then ruled on several motions. The judge determined that if defendant elected to testify, his prior convictions would be admissible for impeachment. The judge also determined that the MVR recording of the show-up would not be admitted because the victim's statements were hearsay and not admissible under the hearsay exception for excited utterances.

At the trial, Sean DeShader of the Asbury Park Police Department (APPD) testified that on October 21, 2014, he and two other officers were on patrol in a marked police vehicle. DeShader stated that at around 9:00 p.m., as they were

traveling north on Main Street, they observed two individuals running across the street at the corner of Main Street and Sewall Avenue. DeShader recognized the individuals and identified them as defendant and Robinson. Defendant and Robinson ran north on Main Street and turned left onto Asbury Avenue.

According to DeShader, defendant was moving fast and Robinson was "trying to catch up." The officers stopped their vehicle, stepped out, and approached defendant and Robinson. DeShader said they decided to stop because defendant and Robinson were in a high-crime area, where there had recently been robberies, and because defendant and Robinson were "fleeing across the street" disregarding traffic.

When the officers approached, defendant slowed down. Robinson stopped abruptly and then began to walk. DeShader observed a black object fall from her right side. He noticed it was a wallet. DeShader picked it up and opened it. The wallet contained a driver's license, issued in Perricone's name, with a photograph of a white male with brown hair. The wallet also contained a health card and Perricone's credit card.

DeShader approached Robinson and she agreed to speak with him. DeShader brought Robinson to the location where the other officers were questioning defendant. DeShader told the officers about the wallet. DeShader

then returned to the route defendant and Robinson had taken. He observed an individual who looked like the man whose picture appeared on the driver's license.

The man was sitting in the window of a restaurant, which was near the corner from which the suspects began to run. DeShader testified that the man had blood coming down the side of his face, and he was complaining to another patron about having been robbed. DeShader identified himself and showed him the wallet. The man confirmed he was Perricone and that the wallet belonged to him.

Perricone told the officer what had happened. DeShader testified that Perricone "seemed out of it, like, when you get hit pretty good." DeShader said Perricone had an injury to his eye, a wound to the right side of his forehead, lacerations to the right side of his eye, and a gash on his nose that was bleeding. He also had abrasions on the palms of his hands, and an abrasion on the back of his fists.

The officers continued their investigation. They walked to a store which was near the corner from which the suspects began to run and observed surveillance cameras. DeShader checked the angles of the cameras to determine whether they could have captured footage of the robbery. As he was doing so,

Charlton approached him. DeShader said he knew Charlton because he had dealt with him previously "on the streets." Charlton told DeShader "[defendant] robbed that white boy." Charlton agreed to come to police headquarters to provide a statement.

DeShader returned to the APPD headquarters. When he arrived, he noticed Charlton was there with an acquaintance, David Edwards, who also had been present at the time of the robbery. Charlton and Edwards provided Detective Daniel Kowsaluk with statements. Robinson also provided a statement.

At trial, Robinson admitted she and defendant committed the robbery. She testified that someone told them the victim had cash. She narrated the surveillance video of the incident as it was played for the jury. She noted that defendant approached "the guy" and tried to persuade him to purchase drugs. She and defendant began to walk with the victim and then robbed him. Later, the police arrested her and she was incarcerated in the county jail.

Robinson said defendant was in the county jail at the time and he wrote to her every day. Sometime in early 2016, after the victim died, Robinson agreed to cooperate with the prosecutors. She testified around that time, defendant's letters to her became threatening. In one of his letters, defendant stated, "If you

7

go against me, you will make the biggest mistake in your life." He also wrote that he could not believe she could be "this weak and stupid" and cursed her.

In February 2016, Robinson pleaded guilty to second-degree conspiracy to commit robbery, and the State agreed to dismiss two other charges pending against her. When Robinson pleaded guilty, defendant wrote to her. He called her a "dumb ass" and said she "stepped all on [his] heart."

In that letter, defendant broke up with Robinson and stated, "May you live forever. It's over now." Robinson testified that she perceived this remark as a threat. She wrote back and told defendant she would withdraw her plea. Thereafter, defendant prepared papers for Robinson to withdraw her plea and forwarded them to her.

Robinson said she signed the papers because she felt threatened, pressured. She stated that she "was just doing it so [defendant] could leave her alone." However, after she submitted the papers for filing, Robinson called her attorney and told him she did not want to withdraw her plea. She said she had filed the motion because defendant pressured her.

Edwards testified that on October 21, 2014, at around 9:00 p.m., he was with Charlton at the corner of Main Street and Sewall Avenue, which was near a liquor store. He saw defendant and Robinson walk by. He said he had known

8

defendant for a long time. Defendant crossed the street, and Edwards saw him speaking with a white man. Edwards went into the liquor store. When he came out, he saw defendant and Robinson running across the street.

Charlton testified that on October 21, 2014, at around 9:00 p.m., he was with Edwards on the corner of Main Street and Sewall Avenue. He saw a person named Carl with a white man. Charlton then observed defendant and Robinson approach the two men. Carl left and defendant spoke with the other man. Charlton saw defendant grab the man as Robinson went into the man's pocket. According to Charlton, defendant threw the man to the ground and took off. Charlton called DeShader and reported the incident.

Charlton further testified that sometime in June 2015, he and defendant were incarcerated in the county jail. Charlton said that in the jail, defendant ambushed him. According to Charlton, defendant "just started wailing" on him and "beat him senseless." Charlton said defendant told him, "every time I see you, I'm going to get you because you know you snitching on me and my girl."

Charlton stated that six officers were required to stop the assault. As the officers were taking defendant away, defendant told Charlton, "every time I see you, man, I'm going to get you man. I'm going to get you, man. I'm going to kill you." A security camera recorded the incident.

The jury found defendant guilty on all charges. On January 26, 2018, the judge denied defendant's motions for a judgment of acquittal or, alternatively, a new trial. The judge granted the State's motion to sentence defendant to an extended term as a persistent offender pursuant to N.J.S.A. 2C:44-3(a).

On Indictment No. 16-04-0739, the judge merged certain offenses and sentenced defendant on count one (robbery) to a thirty-year prison term, with an eighty-five percent parole bar, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The judge imposed a flat twenty-year consecutive term on count four (witness tampering of Charlton). On Indictment No. 16-07-1223, the judge imposed a flat, fifteen-year consecutive term on count one (witness tampering of Robinson).

The judge entered judgments of conviction dated February 13, 2018, and March 2, 2018. This appeal followed.

On appeal, defendant's appellate counsel raises the following arguments:

> [POINT ONE]
> THE TRIAL COURT ABUSED ITS DISCRETION
> BY IMPROPERLY EXCLUDING PROBATIVE AND
> EXCULPATORY EVIDENCE AT TRIAL.
>
> [POINT TWO]
> THE TRIAL COURT ABUSED ITS DISCRETION
> BY DENYING DEFENDANT'S MOTION FOR A
> MISTRIAL.

[POINT THREE]
THE TRIAL COURT ERRED BY CONCLUDING
THAT DEFENDANT WAIVED HIS RIGHT TO A
SUPPRESSION HEARING.

[POINT FOUR]
THE TRIAL COURT ABUSED ITS DISCRETION
BY IMPOSING AN EXCESSIVE SENTENCE.

Defendant has filed a supplemental pro se brief in which he argues:

[POINT ONE]
THIS CASE['S] WRONGFUL CONVICTIONS
STEM[] FROM PROSECUTORIAL
MISCONDUCT[,] VIOLATED [DEFENDANT'S]
GUARANTED [SIC] RIGHTS UNDER THE U.S.
CONST. 4TH, 5TH, 14TH AMENDMENTS AND
N.J. CONST. ARTICLE I, PARAGRAPHS 1, 7
[AND] 8 . . . DUE TO BRADY VIOLATIONS; AN
INVALID COMPLAINT WARRANT . . . WHICH
LACKED JURISDICTION; THE VICTIM'S MVR
STATEMENT BY MR. PERRICONE DID NOT
IDENTIFY APPELLANT AS THE PERSON WHO
ROBBED HIM . . . REQUIRES REVERSAL AND
THAT THE CONVICTIONS BE VACATED.
(Partially Raised Below).

A.  Brady Violation

B.  Invalid Complaint Warrant [and] Existence of
MVR Exculpatory Evidence.

C.  Fatal Defects in [the] State[] Government['s]
Charging Instrument reveals that the Indictments are
void since they have never been endorsed as a true bill
by a foreperson, nor have they been presented in open
court before the [A]ssignment [J]udge or any judge

11

attributed to prosecutorial misconduct to violate defendant[']s constitutional rights.

[POINT TWO]
[THE] MOTION FOR ACQUITTAL OR IN THE [ALTERNATIVE] DEEMED A MOTION FOR A NEW TRIAL [WERE] ARBITRARILY DENIED . . . HEREBY BY SUPPLEMENTATION [OF] APPELLANT'S SIXTH AMENDMENT RIGHTS TO HAVE WITNESSES IN HIS FAVOR AND [ITS] "COMPULSORY PROCESS" WAS VIOLATED DUE TO [A] MISCARRIAGE OF JUSTICE, RESULTING [IN] AN UNFAIR TRIAL[] BECAUSE IT WAS THE PROSECUTOR WHO "PRESERVED" PURSUANT TO N.J.R.E. 801(E) IN THE TRIAL RECORD, EVIDENCE IN NATURE OF N.J.R.E. 804(A)(4) THAT THE VICTIM WAS DECEASED AND THEREFORE UNAVAILABLE AS A WITNESS . . . WHICH ESTABLISHED THE NEXUS FOR THE HEARSAY EXCEPTION IN LIEU OF TESTIMONY TO PROCEED WITH THE STATEMENTS OF CHRISTOPHER PERRICONE. . , DENOTING THAT [DEFENDANT] WAS NOT THE PERSON WHO ROBBED HIM, REQUIRES REVERSAL AND TO VACATE THE WRONGFUL CONVICTIONS. (Partially raised below).

II.

We first consider defendant's contention that the trial judge erred by excluding the MVR of the police officers' show-up, in which the victim told the officers defendant was not the individual who robbed him. Defendant argues that the victim's statements were admissible under the hearsay exception for excited utterances.

12

On appeal, we review the trial court's evidentiary rulings for abuse of discretion. State v. Green, 236 N.J. 71, 81 (2018) (citing State v. Rose, 206 N.J. 141, 157 (2011)). We will not reverse the trial court's evidentiary ruling unless it "is so wide of the mark that a manifest denial of justice resulted." State v. J.A.C., 210 N.J. 281, 295 (2012).

N.J.R.E. 801 defines hearsay as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c). Hearsay may not be admitted into evidence unless it falls within one of the exceptions provided by the rules of evidence or "other law." N.J.R.E. 802.

The "excited utterance" exception allows the admission of a statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition and without opportunity to deliberate or fabricate." N.J.R.E. 803(c)(2). The rationale for the exception is that "'excitement suspends the declarant's powers of reflection and fabrication,' consequently minimizing the possibility that the utterance will be influenced by self-interest and therefore rendered unreliable." State v. Long, 173 N.J. 138, 158 (2002) (quoting 2 McCormick on Evidence § 272, at 204-05 (5th ed. 1999)).

In deciding whether a declarant had an opportunity to fabricate or deliberate, the court should consider "the element of time, the circumstances of the incident, the mental and physical conditional of the declarant, and the nature of the utterance." Id. at 159 (internal quotation marks and citation omitted). Although each factor is important, "[t]he crucial element is the presence of a continuing state of excitement that contraindicates fabrication and provides trustworthiness." State v. Cotto, 182 N.J. 316, 328 (2005) (quoting State v. Lyle, 73 N.J. 403, 413 (1977)).

Here, the record supports the trial judge's determination that the victim's statements on the MVR recording were hearsay and not admissible under the exception for excited utterances. The judge found that, when the police asked the victim to identify the persons who robbed him, he was not under the stress of excitement from the robbery.

The judge noted that on the MVR recording, the victim is heard speaking about his diabetes, and he asked if the police had recovered his wallet. He also is heard joking with the officer. The judge noted that the victim did not sound overwrought or distressed. According to the judge, the victim sounded "somewhat confused."

The judge further found that the victim had the opportunity to deliberate before he made the recorded statements. The judge noted before the grand jury, the victim testified he did not identify the perpetrators on the night of the incident because he was afraid of them and possible retribution.

The judge found the victim's testimony showed he made a "conscious choice" after having deliberated on what would be in his best interest. The judge stated that the victim "contemplated and calculated" and "decided to fabricate a response to the police question." The judge also noted that the victim's statement was in response to a question rather than a spontaneous outburst.

The judge further found that the MVR recording provided further evidence the victim deliberated before answering the officer's question. The judge noted that when the officer drove past defendant and Robinson, he asked the victim if he had seen them. The victim replied, "yeah" and after a pause said "yeah" again. According to the judge, the victim started to say something, but the officer cut him off and said, "is that them?"

The judge stated that the victim replied, "hang on a second." There is another pause and then [the victim] says "no." The judge found that this exchange showed the victim was taking his time in deciding whether to identify the persons who committed the robbery. The judge commented that an excited

utterance should be spontaneous and exclamatory, but the "opposite" occurred here.

We are convinced the record supports the judge's findings and his conclusion that the victim's statements on the MVR recording were not excited utterances under Rule 803(c)(2). The judge did not err by denying defendant's application to admit the MVR recording into evidence.

However, even if the judge erred by refusing to admit the MVR recording, reversal of defendant's convictions is not warranted because the error is harmless. Because the State presented overwhelming evidence showing that defendant committed the charged offenses, the claimed error was not "sufficient to raise a reasonable doubt as to whether" the error "led the jury to a result it otherwise might not have reached." State v. Prall, 231 N.J. 567, 581 (2018) (quoting State v. Daniels, 182 N.J. 80, 95 (2004)).

We therefore conclude the judge did not err by denying defendant's motion for admission of the MVR recording.

### III.

Next, defendant argues the judge erred by denying his motions for a mistrial. Again, we disagree.

"The grant of a mistrial is an extraordinary remedy to be exercised only when necessary 'to prevent an obvious failure of justice.'" State v. Yough, 208 N.J. 385, 397 (2011) (quoting State v. Harvey, 151 N.J. 117, 205 (1997)). The decision of whether to grant a mistrial is "entrusted to the sound discretion of the trial court." State v. Smith, 224 N.J. 36, 47 (2016). We will not disturb the trial court's decision on a motion for a mistrial unless it is shown to be "an abuse of discretion that results in a manifest injustice." State v. Jackson, 211 N.J. 394, 407 (2012) (internal quotation marks and citation omitted).

A defendant who engages in misconduct in the presence of a jury is not entitled to a mistrial. State v. Montgomery, 427 N.J. Super. 403, 407 (App. Div. 2012) (citing State v. Ganal, 81 Haw. 358, 378 (1996); Gordon v. State, 609 N.E.2d 1085, 1087 (Ind. 1993); State v. Wiggins, 337 So.2d 1172, 1173 (La. 1976)). A defendant may not engage in courtroom misconduct "and then expect to be rewarded with a mistrial or new trial" when the trial judge has taken "appropriate cautionary measures." Id. at 410.

In this case, the record shows defendant engaged in disruptive conduct during jury selection by interrupting the judge's discussion of the process. Defendant was angry that the judge had refused to allow the defense to admit the MVR recording, and he demanded he had the right to confront his accuser.

He stated that the court had to dismiss the charges. The judge granted the application by defense counsel to dismiss the potential jurors who witnessed defendant's conduct and directed them not to tell any other prospective jurors about what had occurred in court.

After the jury was selected, defendant interrupted the assistant prosecutor's opening statement by telling the jury there was a recording in which the victim looks at him and stated that he was not the person who robbed him. The judge told defendant to stop interrupting but he continued to disrupt the proceedings. Defendant accused the prosecutor of lying. He invoked his right to confrontation and began to curse and shout. The judge asked the jury to leave the courtroom.

Defense counsel then moved for a mistrial. The judge denied the motion. The judge explained that defendant had been consistently disruptive and there was "no assurance" he would "behave any differently" if a mistrial were declared and trial began anew. The jury returned to the courtroom. The judge instructed the jury that defendant's statements were not evidence and it must decide the case based solely on the testimony and evidence admitted.

The following day, the trial continued. Defendant again engaged in disruptive conduct before the jury and the judge ordered his removal from the

courtroom. The judge instructed the jury that it could not consider defendant's absence against him. Defendant was removed the next day after another outburst during the prosecutor's argument opposing the defense motion for a judgment of acquittal. He yelled and, as he was taken out, continued shouting in the hallway.

The judge also ordered defendant's removal from the courtroom when he interrupted the judge's final instructions to the jury. Defendant stated that the victim did not testify and he was entitled to a fair trial. The judge instructed the jury to leave the courtroom, and defendant continued his disruptive statements.

Defendant's counsel then moved for a mistrial, arguing that the timing of defendant's outburst was prejudicial. The judge denied the motion. The judge again instructed the jurors they could not consider defendant's statements in their deliberations.

On appeal, defendant argues that the judge erred by failing to declare a mistrial. He argues that the facts here are different from those in Montgomery, where the defendant assaulted defense counsel, got into an altercation with the sheriff's officers, attempted to escape from the courtroom, and had to be subdued by the court officers. Id. at 405.

Defendant further argues that in Montgomery, the defendant waited until the conclusion of the State's case to cause a disturbance, and this was after

defendant had seen the overwhelming evidence against him. He claims that in this case, his interruptions began shortly after the trial began, and he did not engage in a deliberate attempt to cause a mistrial.

We are convinced, however, that defendant's attempt to distinguish Montgomery is unavailing. Defendant did not engage in a physical altercation with the court officers or attempt to escape, but his conduct was disruptive and persisted throughout the trial court proceedings. It continued after defendant had the opportunity to see the overwhelming evidence against him.

Viewed in its totality, defendant's conduct was a deliberate attempt to derail the trial. The judge did not abuse his discretion by denying defendant's motions for a mistrial. The judge took steps to ensure that the jury would not consider defendant's disruptive statements and conduct against him.

IV.

Defendant argues that the judge erred by finding that he withdrew his motion to suppress evidence. He contends the judge erred by finding he waived his right to an evidentiary hearing on his motion.

"Waiver is the 'intentional relinquishment or abandonment of a known right or privilege.'" Mazdabrook Commons Homeowners' Ass'n v. Khan, 210 N.J. 482, 505 (2012) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

"To be valid, waivers must be knowing, intelligent, and voluntary." Ibid. (citations omitted). "[A] waiver of constitutional rights in any context must, at the very least, be clear." Id. at 505-06.

As noted, after defendant moved to suppress the victim's wallet, the judge scheduled a hearing on the motion. The State was prepared to call the arresting officer to testify. Defendant interrupted and told the judge:

> THE DEFENDANT: No, Your Honor, I'm- waiving all this, I can care less about any of this stuff, I'm not consenting to nothing that's going on right now. Your Honor, I don't have anything to do with this. I asked you to review the [MVR recording] so you can exonerate me. This is exculpatory evidence. And I refuse to continue on with this process, I do not want my lawyer to say nothing [sic] on my behalf.
>
> . . . .
>
> Your Honor, I don't want this to proceed on. I don't want no [sic] testimony, evidence, that's not in my favor to be . . . to proceed on. I would like first to review this tape. For this to — there's nothing in — there's nothing he [the arresting officer] can say. The victim already told him from the very beginning I did not rob him. From there he had no right to come back . . . and arrest me. Period. . . . There's nothing he can say Your Honor, he did wrong.
>
> THE COURT: If you continue to interrupt me I'm going to have the officers remove you.
>
> THE DEFENDANT: I just don't want, I just —

A-3784-17T4

THE COURT: Because you're preventing the orderly hearing of this case.

THE DEFENDANT: — want to do away with this motion. Your Honor, I don't want to have this motion. I have that right. . . . The victim told him I didn't rob him. There's nothing more to be said. The man told you I didn't do nothing to him. Why am I here?

. . . .

I just want you to review the tape and make a decision after that, from there you can just give my cut-off plea bargain. I don't have nothing else to say. I don't want this motion. . . . I want you to review that this man told this officer over and over again that it wasn't me. Period. And you make your decision from there. . . . I don't want to hear this, this officer ain't going to come over here and try to manipulate the situation. . . . They're trying to cover up for this officer, that's all they're trying to do.

Defendant stated, "I don't want to have this hearing. I mean . . . it's my right." The judge tried to clarify whether defendant wanted to waive his right to the hearing on his motion, but defendant continued to interrupt and ignore the judge's questions. The judge told defendant, ". . . I'm taking this to mean you don't want this suppression hearing. . . . You don't want the motion to suppress hearing - - you don't want the motion to suppress. . . . That's how I'm taking it . . . . And I'm not hearing you disagree with me. . . . Alright, we're going to end this."

Defendant continued to speak over the judge and was eventually removed from the courtroom. After defendant was removed, the judge and both attorneys agreed the court should question defendant further regarding his decision to waive the pretrial motions. Defendant returned to the courtroom, and the judge stated on record that he would not be proceeding with defendant's motions.

The prosecutor said the parties had filled out plea cut-off forms, which indicated that defendant was waiving his right to a hearing on the suppression motion. The prosecutor explained the forms. The judge stated that the pretrial memorandum appeared to have been signed by both attorneys and defendant. The judge asked the sheriff's officer to present the document to defendant one last time.

Defendant responded by insisting he had the right to confront the victim, and the judge again explained this would not be possible because the victim was deceased. The judge asked defendant whether he read and reviewed the pretrial memorandum with his attorney, and defendant stated, "Yeah, I signed all this, Your Honor."

We are convinced the record supports the judge's determination that defendant waived his right to a hearing on his suppression motion. The record shows that defendant reserved the right to seek admission of the MVR recording,

but waived his other pretrial motions, including the motion to suppress the victim's wallet. Defendant's contention that he did not make a knowing, intelligent, and voluntary waiver of his right to a hearing on the motion is entirely without merit.

V.

Defendant argues his sentence is excessive. He contends the judge gave undue weight to the aggravating factors and improperly imposed consecutive rather than concurrent sentences.

We apply a "deferential" standard in reviewing a lower court's sentencing determination. State v. Fuentes, 217 N.J. 57, 70 (2014). This court:

> must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Here, the judge found aggravating factors three (the risk that defendant will commit another offense), six (the extent of defendant's prior criminal record and the seriousness of the offenses for which he has been convicted), and nine

24

(the need for deterring defendant and others from violating the law). N.J.S.A. 2C:44-1(a)(3), (6), (9). The judge found no mitigating factors.

As we noted previously, the judge granted the State's motion to sentence defendant to an extended term as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). The judge sentenced defendant on the robbery to a thirty-year prison term, subject to NERA. The judge also imposed a flat, twenty-year consecutive prison term for the witness tampering of Charlton, and a flat, fifteen-year consecutive prison term for the witness tampering of Robinson.

On appeal, defendant argues that while there is some support in the record for the judge's findings of aggravating factors three, six, and nine, the judge should have given these aggravating factors little or no weight since they formed the basis for the extended term sentence. He contends that the application of the aggravating factors resulted in the imposition of the maximum possible sentences for nearly all of his convictions. He asserts the resulting sentence is excessive. We disagree.

The convictions that made defendant eligible for persistent-offender status under N.J.S.A. 2C:44-3(a) were committed in 2013 and 2009. However, defendant has six other indictable convictions, which include convictions for robbery, aggravated assault, and distribution of a controlled dangerous

substance in a school zone. He also has fifteen disorderly persons convictions, parole and probation violations, and at least nine juvenile dispositions, including one for robbery. The judge aptly noted that defendant has led a "life of crime." Thus, defendant's record provides sufficient evidence to support the judge's findings on aggravating factors three, six, and nine.

In addition, defendant contends the judge erred by imposing consecutive sentences for the two witness-tampering convictions. He argues that the judge did not provide sufficient reasons for these sentences. He contends the witness-tampering convictions could have run concurrently with each other, and the judge erred by failing to explain why he decided to have defendant serve these sentences consecutively.

N.J.S.A. 2C:44-5(a) provides that "[w]hen multiple sentences of imprisonment are imposed on a defendant for more than one offense, including an offense for which a previous suspended sentence or sentence of probation has been revoked, such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence" subject to two limitations, which do not apply here. When deciding whether a sentence should run consecutively or concurrently, the judge should consider:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

     (a) the crimes and their objectives were predominantly independent of each other;

     (b) the crimes involved separate acts of violence or threats of violence;

     (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

     (d) any of the crimes involved multiple victims;

     (e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; . . .

[Id. at 347-48 (quoting State v. Yarbough, 100 N.J. 627, 643-44 (1985)).][1]

---

[1] In Yarbough, the Court added another factor, indicating there should be an outer limit on the cumulation of consecutive sentences for multiple offenses. Id. at 644. This factor is no longer part of the Yarbough analysis because the

A sentencing court must explain its decision to impose concurrent or consecutive sentences because "[a] statement of reasons is a necessary prerequisite for adequate appellate review of sentencing decisions." State v. Miller, 108 N.J. 112, 122 (1987). If the court "fails to give proper reasons for imposing consecutive sentences at a single sentencing proceeding, ordinarily a remand should be required for resentencing." State v. Carey, 168 N.J. 413, 424 (2001).

Here, the trial court failed to provide an explanation for imposing consecutive sentences for the witness tampering convictions. Therefore, the matter must be remanded to the trial court to explain the reasons the court decided to have defendant serve the two sentences for witness-tampering consecutively, rather than concurrent with each other.

In addition, the State argues that the judge erred by imposing a flat, twenty-year sentence on count four on Indictment No. 16-04-0739. Here, the judge merged counts five (retaliation) and six (aggravated assault) with count

---

Legislature enacted N.J.S.A. 2C:44-5(a)(2), which states that "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses." See State v. Carey, 168 N.J. 413, 423 n.1 (2001) (quoting L. 1993, c. 223, § 1).

four (witness-tampering). The judge then imposed a flat, twenty-year prison term on count four.

However, as the State notes, count six is subject to NERA, with its mandatory eighty-five percent period of parole ineligibility and three-year period of parole supervision. See N.J.S.A. 2C:43-7.2(d)(4). Moreover, the NERA periods of parole ineligibility and parole supervision survive the merger. See State v. Robinson, 439 N.J. Super. 196, 201 (App. Div. 2014).

Therefore, the sentence on count four should have included the eighty-five percent period of parole ineligibility and the three-year period of parole supervision, as required by NERA. Because the court must consider the real-time consequences of NERA when imposing a sentence, we remand for resentencing on counts four, five, and six on Indictment No. 16-04-0739.

We have considered the additional arguments presented by defendant in his pro se supplemental brief. We are convinced these arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed in part and remanded in part for a statement of reasons for the imposition of consecutive sentences on count four of Indictment No. 16-04-0739 and count one of Indictment No. 16-07-1223, and for re-sentencing on counts four, five, and six of Indictment No. 16-04-0739. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3784-17T4