NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3424-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EARL L. KELLY,

    Defendant-Appellant.

_____

> Submitted March 17, 2025 – Decided July 23, 2025
>
> Before Judges Gummer, Jacobs, and Jablonski.
>
> On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 22-03-0145.
>
> Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Robert J. Carroll, Morris County Prosecutor, attorney for respondent (Erin Smith Wisloff, Legal Assistant, on the brief).
>
> Appellant filed pro se supplemental briefs.

The opinion of the court was delivered by

GUMMER, J.A.D.

Defendant Earl L. Kelly appeals from a judgment of conviction and sentence imposed following a jury trial at which he was convicted of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); and third-degree criminal restraint, N.J.S.A. 2C:13-2(a). The jury acquitted defendant of all other charges, including first-degree robbery, N.J.S.A. 2C:15-1(a)(2), and multiple counts of first-degree sexual assault, N.J.S.A. 2C:14-2(a)(3) and (4). On the weapons offenses, the court imposed concurrent eight-year terms of imprisonment, with a four-year period of parole ineligibility. The court sentenced defendant to a consecutive four-year term of imprisonment, with no parole ineligibility, on the criminal-restraint conviction.

In his counseled brief, defendant makes the following arguments on appeal:

> POINT I
>
> > AS THIS COURT HELD IN STATE V. JENKINS, 234 N.J. SUPER. 311 (APP. DIV. 1989), THE CONVICTION FOR POSSESSION OF A HANDGUN FOR AN UNLAWFUL PURPOSE MUST BE REVERSED BECAUSE ACQUITTAL OF THE ACCOMPANYING CHARGES ERASED THE INDENTIFICATION OF THE UNLAWFUL PURPOSE, LEADING THE JURY TO SPECULATE AS TO WHAT POSSIBLE PURPOSES QUALIFY AS UNLAWFUL.

POINT II

> THE MATTER MUST BE REMANDED FOR RESENTENCING BECAUSE: 1) THE TRIAL COURT ERRED IN REFUSING TO MERGE THE CONVICTION FOR POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE WITH THE ONLY PROVEN PURPOSE OF CRIMINAL RESTRAINT; 2) THE SENTENCE FOR CRIMINAL RESTRAINT SHOULD BE ORDERED TO RUN CONCURRENTLY WITH THE SENTENCE FOR POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE IF THE OFFENSES ARE NOT MERGED FOR SENTENCING; AND 3) THE TRIAL COURT FAILED TO PROVIDE AN EXPLANATION AS TO THE OVERALL FAIRNESS OF CONSECUTIVE SENTENCES UNDER THE FACTS OF THIS CASE.

> A. The Trial Court Erred in Refusing to Merge the Conviction for Possession of a Weapon for an Unlawful Purpose with Criminal Restraint.

> B. The Sentence for Criminal Restraint Should Be Ordered to Run Concurrently with the Sentence for Possession of a Weapon for an Unlawful Purpose if the Offenses are not Merged for Sentencing.

> C. A Remand Is Necessary Because the Trial Court Failed to Provide an Explanation as to The Overall Fairness of Consecutive Sentences Under the Facts of this Case.

In a supplemental pro se brief, defendant raises these additional issues:

> POINT ONE: IT WAS PLAIN ERROR FOR THE [TRIAL] COURT NOT TO TAILOR THE JURY INSTRUCTION ON COUNT TWELVE, "CRIMINAL

3

RESTRAINT," TO THE FACTS OF APPELLANT'S CASE WHICH REQUIRES REVERSAL OF THAT CHARGE.

POINT TWO: THE "BLUE IPHONE'S" CONTENTS MUST BE SUPPRESSED, AND DEFENSE COUNSEL WAS INEFFECTIVE FOR NOT REQUESTING AS MUCH, BECAUSE THE ARRESTING OFFICERS LACKED THE AUTHORITY TO:

a. Seize it From Appellant's Vehicle – As it Was Not on Appellant's Person at the Time of the Arrest [Not Raised Below by Defense Counsel]

b. Demand that Appellant Produce a Passcode to His/For His "Blue [i]Phone." [Not Raised Below by Defense Counsel]

c. File for a Pen Register Trap and Trace Under the Exigent Circumstances Exception to the Warrant Requirement Because There Was No Exigency at the Time of the Filing of Said Warrant.

POINT THREE: APPELLANT'S [MIRANDA V. ARIZONA, 384 U.S. 436 (1966),] RIGHTS WERE VIOLATED DURING THE JANUARY 7[], 2022 INTERROGATION, AS:

a. The Appellant Was Never Informed of the Actual Charges He was Questioned for.

b. The State's Agents Intentionally Withheld Charging Appellant in Order to Gain Inculpatory Admissions from Him.

4                                    A-3424-22

c.  The State's Agents Placed Undue Influence on Appellant by Quintessentially Threatening to Take His Children--as A Resultant Consequence of Arresting His Fiancé on Gun Charges if He Did Not Incriminate Himself Regarding Same.

d.  The [Trial] Court Forced Counsel for the Defense to be Ineffective During the Miranda Hearing as the "Timing" of the Arrest Warrant(s) Would Have Been Pivotal Pursuant to [State v. Diaz, 470 N.J. Super. 495 (App. Div. 2022),] and It Would Have Shed Light on the Facts Surrounding the Detective's Intentions Pertaining to the Intentional Withholding of the Filing of Charges for "Two Hours."

e.  Appellant Was Subjected to "Pre-Interrogations" By the Parsippany/Morris County Detectives in Stark Contravention of Missouri v. Seibert, 542 U.S. 600 (2004) and State v. O'Neill, 193 N.J. 148 (2007).

f.  Under the Totality of the Circumstances, Appellant's Statements to the Parsippany and Edison Officials Should Have Been Suppressed.

POINT FOUR:  THE STATE VIOLATED BRADY V. MARYLAND[, 373 U.S. 83 (1963),] WHEN IT:

a.  Destroyed Alleged Text Messages Between Detective Keiling and the Officers Performing A Search of Appellant's Vehicle at the Parsippany Police Department.

b.  Did Not Abide by the 2021 Attorney General Directive to Wear Body Worn Camera During the January 7, 2022 Arrest of Appellant in Elizabeth, New Jersey and Counsel for the Defense Was Ineffective for Not Moving to Suppress the Blue iPhone and the Weapon.

c.  Failed to Produce the January 7, 2022 Video Footage From the Elizabeth Wawa Which Captured the Front View of the Store and its Parking Lot Area.

POINT FIVE:  THE STATE MADE HIGHLY PREJUDICIAL STATEMENTS DURING SUMMATION THAT COULD NOT HAVE BEEN CURED, CANNOT NOW BE SUBJECT TO A HARMLESS ERROR ANALYSIS, AND REQUIRE REVERSAL AND THE SCHEDULING OF A NEW TRIAL.

We vacate the conviction because the prosecutor made prejudicial statements during summation suggesting defendant had tailored his testimony based on what he heard while exercising his fundamental rights to attend the trial and confront the witnesses against him, thereby depriving defendant of a fair trial. We remand the case for a new trial. For the sake of completeness, we considered and reject defendant's remaining arguments regarding his convictions. In the unpublished portion of this opinion, we conclude that had we not set aside his convictions, we would have remanded the case for resentencing because the court did not sufficiently analyze the appropriateness of the imposition of the consecutive sentences under State v. Yarbough, 100

6

N.J. 627, 643-44 (1985), or the overall fairness of the sentence under State v. Torres, 246 N.J. 246, 268 (2021).

I.

On December 24, 2021, Detectives George Tsimpedes and John Keiling of the Parsippany Police Department responded to a hotel in Parsippany after receiving a report that a sexual assault had occurred there. They met with the alleged victim, K.N., who was working as an "escort."[1] She reported a "client" had pulled a handgun on her, forced her to take off her clothes, twice placed his penis in her mouth, digitally penetrated her, and took her money before he left her hotel room. She subsequently provided the detectives with a description of the client and the telephone number she had used to contact him. The detectives obtained surveillance footage from the hotel. The telephone number and the surveillance video, which depicted a car leaving the hotel that matched a description of defendant's car, enabled detectives to identify defendant as the primary suspect.

On January 7, 2022, Edison Township police officers located defendant in his car and detained him. Detective Thomas Laird of the Morris County Prosecutor's Office told defendant he was conducting an investigation and had a search warrant for defendant's vehicle; he also told defendant he was being

_____

[1] We use initials in accordance with Rule 1:38-3(c)(12).

detained and would be transported to the Parsippany Police Department. The detective obtained a grey iPhone defendant had in his pocket and a blue iPhone he had on the front seat of his car. Defendant asked if he could call his sister, gave the detective the password to unlock his phone, and called his sister.

After defendant was transported to the Parsippany Police Department, Detective Laird observed a Crime Scene Unit locate a firearm in defendant's car. The firearm was later determined to be a black, brown, and gold .25 caliber semi-automatic Beretta Model 21A. Detective Laird conducted a search of a firearms records database and determined defendant did not have a permit to purchase or a permit to carry a handgun. Detective Laird subsequently extracted data from the cell phones. Data from both phones indicated defendant was at the hotel in Parsippany on December 24, 2021. The blue phone contained a photograph of K.N.'s identification, and data from the phone indicated the photograph was taken on December 24, 2021, at the Parsippany hotel.

At the Parsippany Police Department, Detective Keiling and a detective from the Edison Police Department advised defendant of his Miranda rights. Using a pre-printed form,[2] they read him the Miranda rights, explained them to

---

[2] See State v. Tillery, 238 N.J. 293, 318 (2019) ("Miranda cards . . . should direct the interrogating officer to address the question of waiver in the Miranda

him, asked if he had any questions, had him place his initials next to each one to note he understood them, and advised him to read and sign the waiver at the bottom. Defendant initialed and signed the form. The detectives told defendant he could start talking and stop talking whenever he wished and asked him if he wanted to speak with them. Defendant agreed to speak with them.

Defendant told the detectives he saw escorts approximately twice a week. He admitted he possibly was in Parsippany on December 24. He initially denied having any sexual contact with the victim but ultimately said she had "performed services" and he had paid her. He denied holding her at gunpoint, taking anything from her, or photographing her identification. He denied having a gun in his car. After the initial interrogation ended, defendant asked to speak with Detective Keiling and advised him he wanted to speak further. Detective Keiling again advised defendant of his <u>Miranda</u> rights; defendant initialed and signed a second <u>Miranda</u> form. Detective Keiling and Detective Tsimpedes resumed the interrogation. Defendant admitted he carried a .25 caliber Beretta gun in his car but denied taking it to the hotel room. He asserted the victim had taken the photograph of her identification.

inquiry. <u>Miranda</u> waiver cards and forms should guide an officer to ask whether the suspect understands his or her rights, and whether, understanding those rights, he . . . is willing to answer questions.")

On March 16, 2022, a grand jury issued an indictment, charging defendant with four counts of first-degree sexual assault, N.J.S.A. 2C:14-2(a)(3) and (4); first-degree robbery, N.J.S.A. 2C:15-1(a)(2); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); two counts of third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a); third-degree criminal restraint, N.J.S.A. 2C:13-2(a); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4); and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b).

The State moved pursuant to N.J.R.E. 104(c) to admit the statements made by defendant during the interrogation. During an evidentiary hearing, Detective Keiling testified about his investigation, his interview of the victim, and the interrogation of defendant. After hearing argument on the motion, the court on December 5, 2022, entered an order and written opinion in which it granted the motion to admit defendant's statements. The court found defendant had been duly apprised of his Miranda rights, had clearly understood those rights, and had knowingly, intelligently, and voluntarily waived them.

At the trial, the victim testified that on December 24, 2021, she was working as a prostitute at a hotel in Parsippany. She identified defendant as a

client whom she had met that day in the hotel room. She testified that when he arrived, defendant asked her if she were alone and if she were a police officer and then went into the bathroom and opened the curtain. According to the victim, defendant paid her $150, which she placed under a hotel telephone, and she consensually attempted to perform oral sex on defendant. She testified that when his penis "would not perform," she had told defendant she "could not continue working with him" and he responded, "okay, no problem."

According to the victim, after defendant got dressed, he pulled a black and brown pistol on her, told her to give him her money, and looked around the room for the money. She also stated he had told her to "keep quiet," turned up the volume on the television so no one could hear her, unplugged the hotel telephone, and placed her cell phone on airplane mode. She testified defendant, with one hand holding the gun and the other hand grabbing her head, forced her to perform oral sex on him twice without a condom and then used his fingers to "check[] around [her] vagina . . . to see if [she] had money inside [her] vagina." She stated he ultimately found approximately $500, which included his payment to her, she had placed under the hotel room telephone. According to the victim, before he left, defendant took a photograph of her identification and told her not to leave the room for five

11

minutes. After he left, she called the hotel front desk and law-enforcement officers subsequently came to her room.

In addition to the victim, the State called as witnesses the hotel's assistant general manager and various law-enforcement officials, including Detective Tsimpedes and Detective Laird, who was admitted as an expert in mobile device forensics and testified about his investigatory efforts, evidence regarding defendant's gun and cell phones, and his contact with defendant.

Defendant testified on his own behalf. He admitted he had met the victim at the Parsippany hotel on December 24, 2021, and had hired and paid her to perform sex acts on him. He testified that after she "performed the services," she had asked him for a tip and he told her he had no more cash. He claimed she wanted him to send her money through Western Union and took a photograph of her identification with his blue phone. He admitted that after he was arrested, he had waived his Miranda rights and voluntarily gave a statement to the police. He asserted the victim was able to describe the gun because she had seen a photograph of it on his phone. He denied waving a gun at her, forcing her to have sex with him, or taking anything from her. On cross-examination, he admitted a .25 caliber Beretta gun was found in his car the day he was detained and at that time he was under probation and not allowed to possess any weapon. He denied possessing a gun on December 24,

12

2021, and testified he had placed the gun in his car on January 3 or 4, 2022. He admitted he did not have a permit to purchase or carry the gun and that during the interrogation, he had denied he possessed a gun. He testified the gun had belonged to his friend's deceased father but admitted he had told law-enforcement officers he had purchased it "off the street."

Following the close of evidence and after the court had conducted a charge conference, counsel addressed the jury in their closing arguments. Defense counsel focused on the lack of forensic evidence and on why the jury should believe defendant and not the victim. After recounting the victim's testimony in her summation, the prosecutor stated:

> That's what happened that day, ladies and gentlemen, not what the defendant told you when he was on the stand yesterday after he sat through this entire trial, hearing the testimony of every witness, after he heard all of the evidence against him, after having time to construct a new narrative. What he told you was just a story, a story of having consent, which the victim even admitted that her very first interaction with the defendant was consensual.

Defendant did not object to that or any other part of the prosecutor's summation.

During its charge, the court instructed the jury that "[t]he comments of the attorneys on these matters were not evidence" and that "[a]rguments, statements, remarks, openings and summations of counsel are not evidence and

13

must not be treated as evidence." The court explained, "[a]lthough the attorneys may point out what they think is important in this case, you must rely upon your own understanding and recollection of the evidence that was admitted during the trial. . . . Any comments by counsel are not controlling."

In its charge, which tracked the model jury charges, the court instructed the jury as to the law on the crimes defendant had been charged with committing. Regarding the unlawful-purpose weapons charge, the court instructed the jury that "[a]ny person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another is guilty of a crime." As to the third and fourth elements of that crime, the court explained:

> The third element that the State must prove beyond a reasonable doubt is that defendant's purpose in possessing the firearm was to use it against the person or property of another. Purpose is a condition of the mind which cannot be seen and can only be determined by inferences from conduct, words or acts.
>
> In determining the defendant's purpose in possessing the firearm, you may consider that a person acts purposely with respect to the nature of his conduct or a result of his conduct if it is the person's conscious object to engage in conduct of that nature or to cause such a result. That is, a person acts purposely if he means to act in a certain way or to cause a certain result. A person acts purposely with respect to attendant circumstances if the person is aware of the existence of such circumstances or believes or hopes that they exist.

14

The defendant's purpose or conscious objective to use the firearm against another person or the property of another may be found to exist at any time he is in possession of the object and need not have been the defendant's original intent in possessing the object.

The fourth element that the State must prove beyond a reasonable doubt is that the defendant had a purpose to use the firearm in a manner that was prohibited by law. I've already defined "purpose" for you. This element requires that you find that the State has proven beyond a reasonable doubt that the defendant possessed a firearm with the conscious objective, design or specific intent to use it against the person or property of another in an unlawful manner as charged in the indictment, and not for some other purpose.

In this case, the State contends that the defendant's unlawful purpose in possessing the firearm was to use it against the person of [K.N.]; that is, to threaten her with the weapon during the commission of the crimes of aggravated sexual assault and robbery and to point the weapon at [K.N.] during the aggravated assault.

You must not rely on your own notions of the unlawfulness of some of the other undescribed purposes of the defendant; rather, you must consider whether the State has proven the specific unlawful purpose charged. The unlawful purpose alleged by the State may be inferred from all that was said or done and from all of the surrounding circumstances of this case. However, the State need not prove that the defendant accomplished his unlawful purpose of using the firearm.

[(Emphasis added).]

The court gave the following instruction on criminal restraint:

A person is guilty of criminal restraint if he knowingly restrains another unlawfully in circumstances exposing the other to risk of serious bodily injury.

In order for you to find the defendant guilty of this offense, the State must prove the following elements of this offense beyond a reasonable doubt:

Number [one], that the defendant knowingly restrained [K.N.];

Number [two], that the defendant knew the restraint was unlawful; and,

[Three], that the restraint was under circumstances in which the defendant knowingly exposed [the victim] to the risk of serious bodily injury.

The first element that the State must prove beyond a reasonable doubt is that the defendant knowingly restrained [the victim]. The word "restraint" means confinement, abridgement or limitation. Restraint involves hindrance, confinement or restriction of liberty.

The second element that the State must prove beyond a reasonable doubt is that the defendant knew that the restraint was unlawful.

The term "unlawful" means to accomplish the restraint by force, threat, or deception.

The third element that the State must prove beyond a reasonable doubt is that the restraint was under circumstances in which the defendant knowingly exposed [K.N.] to a risk of serious bodily injury. The term "serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted

loss or impairment of the functions of any bodily member or organ.

With regard to all three of these elements, the State must prove beyond a reasonable doubt that the defendant acted knowingly.

The jury convicted defendant of the two weapons charges and of criminal restraint. The jury acquitted defendant of all other charges.

After the jury rendered its verdict and before the court conducted a sentencing hearing, the court permitted defendant to file and argue a motion his attorney had declined to submit. In the motion defendant argued the unlawful-purpose conviction could not stand because the jury had acquitted him of the specific unlawful purposes that had been charged and no evidence of a broader unlawful purpose had been "adduced." He also argued the evidence presented at trial was insufficient to support the criminal-restraint conviction and contended the verdicts were "fatally inconsistent." After hearing argument, the court denied the motion, finding:

> And in this case, . . . the jury clearly believed, based on their verdict, that [defendant] went to that hotel room armed with a black and brown pistol. And he displayed that pistol because the victim was able to describe it to law enforcement. And . . . getting to . . . whether there's sufficient evidence, she testified that he pulled out the pistol. She described it as a pistol that was black and brown in color, the same pistol that was later recovered from [defendant's] automobile.

17

> She testified that [defendant] told her to keep quiet. She testified that when he first came into the room, he checked the bathroom, asked her if there was anyone else present. Testified he pulled back the shower curtain and photographs show, when the police arrived, the shower curtain had been pulled back somewhat, as if someone had looked in the bathroom, in the shower to see if there was anyone hiding. He turned up the volume of the TV, according to the witness, he pulled out the phone jack.
>
> On those circumstances alone, the jury could find that he had an unlawful purpose.

At the sentencing hearing, the court addressed the aggravating and mitigating factors, finding aggravating factors three ("risk that the defendant will commit another offense"), six ("extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted"), and nine ("need for deterring the defendant and others from violating the law") applied. N.J.S.A. 2C:44-1(a)(3), (6), and (9). Finding no mitigating factors, the court held the aggravating factors outweighed the mitigating factors. Addressing whether the unlawful-purpose and criminal-restraint convictions should merge, the court held "[m]erger is not appropriate under the circumstances here based on State v[.] Diaz," 144 N.J. 628, 639 (1996).

On the unlawful-possession conviction, the court sentenced defendant to an eight-year term of imprisonment with a four-year parole-ineligibility period.

The court rendered the same sentence on the unlawful-purpose conviction and held that sentence would run concurrent to the sentence imposed for the unlawful-possession conviction. On the criminal-restraint conviction, the court imposed a four-year term of imprisonment with no period of parole ineligibility, to be served consecutively to the sentence imposed on the unlawful-possession conviction. The court also required defendant to pay certain monetary fines and penalties and to provide a DNA sample.

The court explained its decision to impose consecutive sentences:

> I do think it requires a consecutive sentence primarily for the reasons expressed by the prosecutor. . . . [T]here is a separate victim on the criminal restraint count, that being [K.N.]. Count [nine] is an offense, as the prosecutor . . . indicated that focuses on the State being a victim. It's . . . a possessory offense, possession of a weapon without a permit, and the criminal restraint count is focused on harm inflicted to a separate victim, and that would be [K.N.].
>
> And I think the [Yarbough] [f]actors indicate a consecutive sentence is appropriate under the circumstances. There should be no free crimes here and running a concurrent sentence would essentially give [defendant] a free crime committed against [K.N.], so a consecutive sentence is appropriate.

The court entered an order denying defendant's motion on June 8, 2023, and a judgment of conviction on June 9, 2023. This appeal followed.

## II.

We address first the argument defendant raised last in his supplemental pro se brief.  Defendant argues he is entitled to a new trial pursuant to State v. Daniels, 182 N.J. 80 (2004), due to "highly prejudicial statements" the prosecutor made during her summation.  Defendant specifically takes issue with the prosecutor's assertion defendant had tailored his testimony based on what he heard while attending the trial, language we repeat here:

> That's what happened that day, ladies and gentlemen, not what the defendant told you when he was on the stand yesterday after he sat through this entire trial, hearing the testimony of every witness, after he heard all of the evidence against him, after having time to construct a new narrative.  What he told you was just a story, a story of having consent, which the victim even admitted that her very first interaction with the defendant was consensual.

The State concedes the prosecutor erred but contends reversal is not warranted because the prosecutor's statements did not "substantially prejudice[]" defendant "in presenting the merits of his case."  In making that argument, the State relies in part on instructions the court gave during its charge that counsels' statements and summations were not evidence.

Because defendant did not object at trial to the prosecutor's summation, we consider his challenge to the language at issue under the plain-error standard of review.  Id. at 80 (reviewing alleged error based on prosecutor's

summation under a plain-error standard of review when defendant made no objection to the summation at trial). "Under that standard, a reviewing court must 'disregard any alleged error unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Bragg, 260 N.J. 387, 404 (2025) (quoting State v. Funderburg, 225 N.J. 66, 79 (2016)) (internal quotation marks omitted). "Reversal is justified only when the error was 'sufficient to raise a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" Ibid. (omission in original) (quoting Funderburg, 225 N.J. at 79) (internal quotation marks omitted).

In Daniels, the Court considered under the plain-error standard the following unobjected-to statements the prosecutor had made during summation in that case:

> Now, I said that the defendant in his testimony is subject to the same kinds of scrutiny as the State's witnesses. But just keep in mind, there is something obvious to you, I'm just restating something you already know, which is all I do in my summation, the defendant sits with counsel, listens to the entire case and he listens to each one of the State's witness[es], he knows what facts he can't get past. The fact that he was in the SUV. The fact that there's a purse in the car. The fact that a robbery happened. But he can choose to craft his version to accommodate those facts.
>
> [182 N.J. at 87 (alternation and emphasis in original).]

The trial court in Daniels included the following instructions in its charge:

You are to determine the credibility of the various witnesses, as well as what weight to attach to any particular witness'[s] testimony. You and you alone are the sole and exclusive judges of that evidence, the credibility of the witnesses and the weight to attach to the testimony of each witness.

Regardless [of] what counsel may have said during their closing arguments or if I say anything about the evidence, which I generally do not, keep in mind it is your recollection of the evidence that should guide you as the judges of the facts. Any arguments, statements, remarks in the opening or summations of counsel are not evidence and must not be treated by you as evidence.

[Ibid. (alterations in original).]

Reversing the defendant's conviction and remanding the case for a new trial, the Court held the prosecutor's statements were improper and the trial court's instructions did not cure them. Id. at 100-02.

In reaching that conclusion, the Court considered a criminal defendant's "fundamental rights that are 'essential to a fair trial.'" Id. at 97 (quoting Pointer v. Texas, 380 U.S. 400, 403 (1965)). Those rights include "the right to be present at trial," "to be confronted with the witnesses against him and to hear the State's evidence," "to present witnesses and evidence in his defense," and "to testify on his own behalf." Ibid. The Court held "[p]rosecutorial comment suggesting that a defendant tailored his testimony inverts those rights, permitting the prosecutor to punish the defendant for exercising that

22

which the Constitution guarantees[, and] . . . undermine[s] the core principle of our criminal justice system—that a defendant is entitled to a fair trial." Id. at 98.

The Court recognized "generic and specific" categories of "prosecutorial accusations of tailoring." Ibid. "Generic accusations occur when the prosecutor, despite no specific evidentiary basis that defendant has tailored his testimony, nonetheless attacks the defendant's credibility by drawing the jury's attention to the defendant's presence during trial and his concomitant opportunity to tailor his testimony." Ibid. Specific allegations of tailoring occur "when there is evidence in the record, which the prosecutor can identify, that supports an inference of tailoring." Ibid. The Court held that because "generic accusations of tailoring debase the 'truth-seeking function of the adversary process,' violate the 'respect for the defendant's individual dignity,' and ignore 'the presumption of innocence that survives until a guilty verdict is returned,'" ibid. (quoting Portuondo v. Agard, 529 U.S. 61, 76 (2000) (Stevens, J., concurring)), they are not "a 'legitimate means to bring about a just conviction,'" ibid. (quoting State v. Smith, 167 N.J. 158, 177 (2001)). The Court held "prosecutors are prohibited from making generic accusations of tailoring during summation." Ibid.

23

Regarding specific accusations of tailoring, the Court concluded "[i]f there is evidence of tailoring, beyond the fact that the defendant was simply present at the trial and heard the testimony of other witnesses, a prosecutor may comment, but in a limited fashion."  Id. at 98-99.  The Court held "[t]he prosecutor's comments must be based on the evidence in the record and the reasonable inferences drawn therefrom" and that "the prosecutor may not refer explicitly to the fact that the defendant was in the courtroom or that he heard the testimony of other witnesses, and was thus able to tailor his testimony." Id. at 99.

Viewing the prosecutor's comments in summation as specific accusations of tailoring, the Court nevertheless held they were improper and required reversal of the defendant's conviction.

> [T]he prosecutor's comments highlighted the fact that defendant was able to "sit" in the courtroom during trial, enabling him to "listen[]" to other witnesses testify.  Then, the prosecutor urged the jury to infer that defendant thus "craft[ed] his version."  These comments are precisely the type that a prosecutor is prohibited from making, even when the record indicates that defendant tailored his testimony.
>
> [Id. at 101.]

The Court held the trial court's jury charge failed to cure "the harmful effects" of the prosecutor's comments because the "generic jury instruction . . .

24

reminded the jury to differentiate argument from evidence, but . . . made no mention of the prosecutor's accusations of tailoring." Id. at 101-02.

The prosecutor could have challenged defendant's credibility using evidence in the record. But that's not what she did. Instead, she impermissibly attacked his credibility based on his exercise of his fundamental rights to attend his trial and confront the witnesses presented against him. The comments made by the prosecutor in her summation in this case are indistinguishable from the improper comments made by the prosecutor in Daniels. Like the Daniels prosecutor, the prosecutor in this case highlighted that defendant had "sat through this entire trial, hearing the testimony of every witness" and testified "after he heard all of the evidence against him, after having time to construct a new narrative." The prosecutor told the jury, "[w]hat he told you was just a story, a story of having consent . . . ." The prosecutor's comments were not about an inconsequential matter but went to the core of defendant's case.

The prosecutor directly and without question overstepped the clear boundaries of acceptable vigorous advocacy set by the Court in Daniels, depriving defendant of a fair trial. The Daniels Court held "the prosecutor may not refer explicitly to the fact that the defendant was in the courtroom or that he heard the testimony of other witnesses, and was thus able to tailor his

A-3424-22

testimony." Id. at 99. Despite that prohibition, that is exactly what the prosecutor did in this case. She explicitly referenced defendant sitting "through this entire trial," "hearing the testimony of every witness," and testifying "after having time to construct a new narrative." The court did not provide any specific instructions to disregard the prosecutor's comments. And like the charge in Daniels, the trial court's generic instructions that counsels' statements were not evidence did not cure the harmful effects of the prosecutor's improper comments. Following Daniels, we are constrained to vacate the convictions in this case and remand the case to the trial court for further proceedings, including a new trial.

## III.

For the sake of completeness, we address defendant's remaining arguments on other issues.

## A.

Defendant argues we must reverse the unlawful-purpose conviction because the jury acquitted him of "the substantive offenses" of sexual assault, robbery, and aggravated assault and because the jury charge on the unlawful-purpose charge was flawed. In so arguing, defendant relies on our 1989 decision in Jenkins, 234 N.J. Super. 311. Rejecting that argument, we

follow the more recent, directly-on-point, Supreme Court decision in <u>State v. Banko</u>, 182 N.J. 44 (2004).

In <u>Banko</u>, the defendant was convicted of second-degree possession of a weapon for an unlawful purpose and acquitted of kidnapping, attempted aggravated sexual assault, and aggravated assault. <u>Id.</u> at 45-46. After the jury had rendered its verdict, the trial court granted the defendant's motion for a new trial. <u>Id.</u> at 52. The trial court "reasoned that the unlawful purpose conviction was 'legally incongruous' with" the acquittals of the other charges and "concluded that 'the evidence [wa]s insufficient to show the unlawful purpose of using the weapon.'" <u>Ibid.</u> (alteration in original). This court reached the same conclusion but determined the defendant was entitled to entry of a judgment of acquittal, not a new trial. <u>Id.</u> at 46.

Reversing the decision and reinstating the defendant's conviction, the Supreme Court "reaffirm[ed] that a jury may render inconsistent verdicts so long as there exists a sufficient evidential basis in the record to support the charge on which the defendant is convicted." <u>Ibid.</u> The Court found:

> In this matter, that defendant was acquitted of the substantive charge of attempted aggravated sexual assault is not fatal to the conviction for possession of a weapon for an unlawful purpose. The superficial inconsistency between the two charges does not void the legitimacy of the jury's conviction. The jury may have chosen to convict on possession of a weapon for an unlawful purpose, the purpose being, as the court

> instructed in respect of the State's theory of the case, to confine [the victim] and to assault her sexually. And, yet, the jury could have determined not to convict defendant on the substantive offenses for reasons known only to the jury.
>
> [Id. at 56.]

The Court noted the merit in the State's argument that "the verdicts here [were] not inherently inconsistent." Id. at 57. The Court acknowledged "[t]he jury did not have to believe all of the victim's testimony, and may have found some aspects of defendant's story more credible" and that the jury's acquittal of the assault and kidnapping charges "may be due to the jury's disinclination to accept [the victim's] story in its entirety." Ibid.

The Court nevertheless "accept[ed] the arguably inconsistent verdicts, and decline[d] to speculate on the reasons for the jury's determination." Id. at 56. The Court held "[t]he only factual assessment required is to ensure that there was sufficient evidence to support the charge for which defendant was convicted." Ibid. Conducting that factual assessment, the Court found the unlawful-purpose conviction "rest[ed] on a sufficient evidential base." Ibid. In reaching that conclusion, the Court referenced the defendant's non-denial he had "produced a BB gun" and the victim's testimony that at some point during their encounter, the defendant had pointed a gun at her, told her he was going to sexually assault her, and otherwise verbally threatened her. Ibid.

28

Following <u>Banko</u>, we accept the arguably inconsistent verdicts, review the evidential record, and conclude the unlawful-purpose conviction was supported by sufficient evidence in the record. Defendant may have denied having a gun with him on December 24, 2021, but a jury could have believed the victim's testimony that he had a gun, especially when her description of the gun matched the gun found in defendant's car on January 7, 2022. And the jury could have believed some of the rest of the victim's testimony, which was similar to the victim's testimony in <u>Banko</u>, that defendant had pulled a gun on her and threatened her while demanding she give him her money. That evidence is enough to support an unlawful-purpose conviction.

The <u>Banko</u> Court also addressed the trial court's unlawful-purpose jury charge, even though no party had challenged it. The trial court had included in its charge the following language:

> In this case the State contends that the defendant's unlawful purpose in possessing the firearm was to unlawfully confine [the victim] with the purpose to commit the crime of aggravated sexual assault upon [the victim].
>
> You must not rely on your own notions of the unlawful purpose of the defendant. Rather, you must consider whether the State has proven the specific unlawful purpose charged. The unlawful purpose alleged by the State may be inferred from all that was said or done and from all the surrounding circumstances of this case.

[Id. at 51.]

The Court concluded that if it had to consider it, the Court would find the charge "pass[ed] muster" because it "followed the model charge and was case-specific."  Id. at 58.

The Court distinguished Jenkins in part because in Jenkins, "the jury had not been instructed on the specific unlawful purposes suggested by the evidence" and "the instruction failed to inform the jury that it could not convict based on its own notions of unlawfulness or an undescribed purpose."  Id. at 55.  Relying on Jenkins, defendant challenges the unlawful-purpose charge the trial court gave in this case.  But the jury charge in this case did not have the infirmities the Jenkins jury charge had, as identified by the Court in Banko. Unlike the trial court in Jenkins, the trial court in this case instructed the jury on the unlawful purposes suggested by the evidence and informed the jury that it could not rely on its own "notions of . . . unlawfulness."  Like the jury charge in Banko, the charge in this case was "case-specific" and "followed the model charge," id. at 58, including the language of the model charge that provides "the State need not prove that defendant accomplished his[] unlawful purpose of using the firearm," Model Jury Charges (Criminal), "Possession Of A Firearm With A Purpose To Use It Unlawfully Against The Person Or Property Of Another (N.J.S.A. 2C:39-4(a))" (rev. Oct. 22, 2018).

A-3424-22

For all those reasons, we conclude defendant's arguments about the unlawful-purpose conviction – that it must be reversed because of the acquittals or because the charge on that crime was inadequate or insufficiently tailored to the facts of the case – to be without merit.

B.

In this unpublished portion of the opinion, we now turn to defendant's arguments about his sentence, including his contention the trial court erred in not merging the unlawful-purpose conviction with the criminal-restraint conviction.

"[T]he doctrine of merger is based on the precept that 'an accused [who] committed only one offense . . . cannot be punished as if for two.'" State v. Herrera, 469 N.J. Super. 559, 565 (App. Div. 2022) (second alteration in original) (quoting State v. Davis, 68 N.J. 69, 77 (1975)). When a defendant is convicted of possession of a weapon for an unlawful purpose and another crime, the convictions must merge when the evidence does not support the existence of another unlawful purpose for possession of the weapon. State v. Tate, 216 N.J. 300, 303 (2013).

In its indictment, the grand jury charged defendant with possession of a weapon for an unlawful purpose generally and did not specify a particular unlawful purpose. In its unlawful-purpose jury instruction, the trial court

31

identified other crimes, not criminal restraint, as the unlawful purposes for which the State had contended defendant possessed the gun and told the jury it could not "rely on [its] own notions of . . . unlawfulness" and had to consider "the specific unlawful purpose charged."  Following those instructions, the jury could not have premised the unlawful-purpose conviction on the criminal-restraint allegations.  See State v. Burns, 192 N.J. 312, 335 (2007) ("One of the foundations of our jury system is that the jury is presumed to follow the trial court's instructions").  And as we already have determined, the evidence supports the existence of another unlawful purpose for possession of the weapon other than criminal restraint.  Thus, we perceive no error in the trial court's decision not to merge the unlawful-purpose conviction with the criminal-restraint conviction.

We find fault with the court for merely mentioning and not applying the analysis required under Yarbough, 100 N.J. at 643-44, to justify the imposition of the consecutive sentences and for not "explaining the overall fairness" of the sentence it had imposed pursuant to Torres, 246 N.J. at 268.  These sentencing issues obviously are mooted by our decision to vacate the convictions and remand for a new trial.  However, had we affirmed the convictions, we would have remanded the case for resentencing with respect to

32                                                                      A-3424-22

the consecutive treatment of the sentences under the criteria of <u>Yarbough</u> and <u>Torres</u>.

C.

We conclude defendant's argument his <u>Miranda</u> rights were violated is without merit for the reasons set forth in the trial court's comprehensive opinion granting the State's motion to admit defendant's statements into evidence.

To the extent we have not addressed them, we have considered all the remaining points and sub-points raised on appeal and deem them of insufficient merit to warrant discussion.  <u>R.</u> 2:11-3(e)(2).

Vacated and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division